**UNITED STATES of America, Appellee,**

v.

**Donald CAPARELLA,
Defendant-Appellant.**

**No. 1250, Docket 83–1059.**

United States Court of Appeals,
Second Circuit.

Argued May 12, 1983.

Decided Aug. 26, 1983.

Phylis Skloot Bamberger, Federal Defender Services Unit, New York City, for defendant-appellant.

Brian E. Maas, Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Jane Simkin Smith, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Before OAKES, CARDAMONE and PIERCE, Circuit Judges.

CARDAMONE, Circuit Judge:

The question presented on this appeal requires us to focus on policy considerations which undergird the Speedy Trial Act of 1974 (Act) in order to determine whether the dismissal of a criminal complaint against appellant should have been with or without prejudice. Appellant advances two arguments in support of his contention that the dismissal should have been with prejudice so as to bar his reprosecution. He first contends that the dismissal of the charges against him resulted from the government's failure to file an information or indictment within 30 days after a complaint was filed against him and that such dismissal is statutorily presumed to be with prejudice. His second claim is that upon a proper analysis of the four factors set forth in 18 U.S.C. § 3162(a)(1) (1976)—seriousness of the offense, facts and circumstances leading to dismissal, impact of reprosecution on the administration of the Act, and impact of reprosecution on the administration of justice—the dismissal should have been with prejudice.

## FACTS

On June 10, 1981 Donald Caparella, a United States Postal Service employee, was arrested after he opened a package containing a ring that he was supposed to deliver. He was charged that same day with the felony of mail theft, a violation of 18 U.S.C. § 1709 (1976), and the misdemeanor of opening mail without authority under 18 U.S.C. § 1703(b) (1976). Arraigned before a Magistrate in the Eastern District of New York, he entered a plea of not guilty and was released on his own recognizance. The Assistant United States Attorney in charge of the case failed to file either an information or indictment against Caparella prior to July 10, the 30th day after the arrest, as required by the Act, 18 U.S.C. § 3161(b) (1976). On July 31—51 days after defendant's arrest—the government made an *ex parte* motion for dismissal which the Magistrate granted. It is this dismissal that is the subject of the appeal before us.

The government later filed a one count misdemeanor information charging defendant with a violation of § 1703(b). Following arraignment on this charge, defendant moved to dismiss for violation of the Act. During the hearing on the motion the Magistrate acknowledged that, when he had determined whether the dismissal was with or without prejudice, he had not considered or applied those factors set forth in 18 U.S.C. § 3162(a)(1). Nonetheless, he denied the motion holding that the earlier dismissal had been without prejudice. At defend-

ant's bench trial, the Magistrate found Caparella guilty and sentenced him to three years probation. Upon appeal to the United States District Court for the Eastern District of New York, 542 F.Supp. 826 (Platt, J.), the case was remanded to the Magistrate for him to redetermine the dismissal issue, using the factors set out in section 3162(a)(1).

At the remand hearing the Magistrate again concluded that his July 31 dismissal had been without prejudice to later reprosecution. He stated that had he only considered the second factor, the facts and circumstances leading to dismissal, i.e., the government's negligence, he would have dismissed with prejudice. But the other three factors tipped the scales in favor of dismissal without prejudice. As to the first factor, he said that the appellant's conduct was of a serious nature because it involved a breach of public trust. The Magistrate believed, with respect to the third factor, that the administration of the Act would not be impaired by a reprosecution since there was no serious delay involved in appellant's reprosecution and he was ultimately brought to trial within the total number of days contemplated under the Act. The Magistrate concluded that the administration of justice would be furthered since reprosecution would deter misconduct by other postmen. This appeal followed the district court's adoption of the Magistrate's findings.

## DISCUSSION

■ We consider first Caparella's assertion that he was entitled to a statutory presumption that the dismissal was with prejudice. Unlike many other provisions of the Act, section 3162(a)(1) is not unfathomable. It states simply that

[i]f, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) [30 days] ..., such charge against that individual contained in such complaint shall be dismissed or otherwise dropped. In deter-

mining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

It is readily apparent that no mention of any sort of presumption is made in the language of the statute. "Absent a clear indication of legislative intent to the contrary, the statutory language controls its construction." *Ford Motor Credit Co. v. Cenance,* 452 U.S. 155, 158 n. 3, 101 S.Ct. 2239, 224, n. 3, 68 L.Ed.2d 744 (1981). Thus, we examine the statute's legislative history in order to ascertain whether such a presumption was included as part of the legislative purpose.

In the late 1960s the Advisory Committee on the Criminal Trial of the American Bar Association's Project on Minimum Standards for Criminal Justice developed the *Standards Relating to Speedy Trial (ABA Standards).* Its provisions included the sanction of dismissal with prejudice for violation of the time limitations established for speedy prosecutions. A. Partridge, *Legislative History of Title I of the Speedy Trial Act of 1974* 11–12 (1980) (Partridge). Without an effective remedy, the Committee concluded that speedy trial rules would be "largely meaningless," *id.* at 32. Drawing heavily upon the *ABA Standards,* Representative Abner Mikva introduced the "Pretrial Crime Reduction Act of 1971" before the House of Representatives. H.R. 7107, 92d Cong., 1st Sess. (1971), *reprinted in* Partridge at 279–85. Like the *ABA Standards,* the Mikva bill provided for dismissal with prejudice. In the Senate, Senator Sam Ervin, Jr. introduced a bill with substantially the same sanction. S. 895, 92d Cong., 1st Sess. (1971), *reprinted in* Partridge at 286–94. A 1972 Senate Subcommittee version of the bill retained the dismissal with prejudice sanction. S. 754, 93d Cong., 1st Sess. (1973), *reprinted in* Partridge at 295–309. In his opening statement to the Senate Judiciary Committee's

Subcommittee on Constitutional Rights, Senator Ervin stated that "[a] time limit without enforcement is merely an empty plea.... I recognize that outright dismissal is a harsh sanction but it is the only one that promises to be effective." *Speedy Trial: Hearing on S. 754 Before the Subcomm. on Constitutional Rights of the Senate Comm. on the Judiciary,* 93d Cong., 1st Sess. 3–4 (1973). Despite Senator Ervin's view, the inclusion of this sanction in the bill drew heavy fire. Senator John McClellan 'proposed either eliminating it or postponing its effective date. *Id.* at 164–65. Professor (now Justice) Dallin Oaks severely criticized the sanction and termed it "too radical." *Id.* at 139. The 1973 Senate version of the bill retained the dismissal sanction but, as a compromise, permitted reprosecution "if the court in which the original action was pending finds that the attorney for the government has presented compelling evidence that the delay was caused by exceptional circumstances which the government and the court could not have foreseen or avoided." S. 754, 93d Cong., 2d Sess. (1974), *reprinted in* Partridge at 310–34. This version was passed by the Senate and sent to the House.

There, the House Judiciary Committee restored the dismissal with prejudice sanction. H.R. 17409, 93d Cong., 2d Sess. (1974), *reprinted in* Partridge at 335–74. The report accompanying H.R. 17409 adopted the *ABA Standards* position that the only effective remedy for denial of speedy trial is absolute and complete discharge. H.R.Rep. No. 1508, 93d Cong., 2d Sess. 37, *reprinted in* 1974 U.S.Code Cong. & Ad.News 7401, 7430. Criticism of the sanction continued and, in a letter to Representative Peter Rodino, Jr., Attorney General William Saxbe wrote "[m]andatory prejudicial dismissal of criminal cases not tried within arbitrary time limits can only serve to injure the public and our system of justice ...." 120 Cong.Rec. 41,619, 41,620 (1974), *reprinted in* Partridge at 217. Ultimately, the House rejected the sanction of outright dismissal with prejudice and adopted the compromise position found in present section 3162(a)(1), under which courts must consider and balance the four factors already noted. The Senate speedily adopted the compromise in its passage of the bill.

Five years after the Act's passage, a demand was made for temporary suspension of the dismissal sanction and amendments to the Act, delaying imposition of the sanction until July 1, 1980, were enacted. Pub.L. No. 96–43, 93 Stat. 328–29 (1979). Nevertheless, in its report recommending such action, the House Judiciary Committee noted "while the act does permit dismissal without prejudice, extensive use of this procedure could undermine the effectiveness of the act and prejudice defendants, and the committee intends and expects that use of dismissal without prejudice will· be the exception and not the rule." H.R.Rep. No. 390, 96th Cong., 1st Sess. 8–9, *reprinted in* 1979 U.S.Code Cong. & Ad.News 805, 812–13.

Based upon the language of this 1979 House Report, Caparella argues that a presumption in favor of dismissal with prejudice was created. Support for his position is found in *United States v. Angelini,* 553 F.Supp. 367, 370 (D.Mass.), *aff'd on other grounds,* 678 F.2d 380 (1st Cir.1982), where the court held such a presumption necessary to a reasonable construction of the statute. We disagree with the court in *Angelini* and find no presumption in favor of dismissal with prejudice. As indicated by the legislative history just recounted, dismissal with prejudice was originally viewed as necessary to the successful implementation of the Act. But, in order to secure passage of the Act, a compromise was reached which specifically left it to the trial judge to decide the appropriate sanction for violation of the Act's time limits. This view finds strong support in the 1974 House Floor Debates.

> [Mr. COHEN] The amendment I intend to offer later this morning will, I believe, remove any serious objection to this act by leaving dismissal with or without prejudice up to the court, again taking into account the case where justice might not be served by the strict 100-day limitation.
>
> ....

Mr. DENNIS. As I understand the thrust of that argument, rather than making the dismissal, when the time limits are exceeded, with prejudice so that no prosecution can be brought up again, this will make that question discretionary also with the court, as to whether he dismisses with or without prejudice.

Mr. COHEN. That is correct.

120 Cong.Rec. 41,777–78 (1974), *reprinted in* Partridge at 218; *see also id.* at 41,794 (1974), *reprinted in* Partridge at 219.

It would ill behoove a court to engraft a presumption on statutory language plain on its face that does not include it. Instead, we prefer to follow the thrust of the compromise reached in Congress and leave the discretionary decision on whether dismissal is with or without prejudice to the courts. *See United States v. Bittle,* 699 F.2d 1201 (D.C.Cir.1983) (section 3162(a)(1) applied without use of a presumption).

■ We turn next to the application by the Magistrate of the four criteria to the facts in this case and his conclusion that the dismissal of the complaint was without prejudice. We believe that the dismissal here should have been with prejudice and that the Magistrate's finding to the contrary, adopted by the district court, constituted an abuse of discretion. As to the first factor, while recognizing that a breach of the public trust is not to be ignored, we do not consider appellant's conduct a "serious" crime, absent exacerbating circumstances such as violence, which is not here present. Congress viewed the crime originally charged as the lowest order of felony. The Magistrate's comparison of this offense with armed robbery from a post office (mandatory 25 year sentence) is particularly inapt.

With respect to the second factor—the facts and circumstances leading to dismissal—the record establishes that the prosecutor's negligence was the sole cause of the failure to comply with the Act's time requirements. The government's only explanation for the lack of diligence displayed was that it was simply an oversight; no other excuse was proffered. The govern-ment's failure to adhere to the Act's 30-day time limitation clearly was careless inadvertence, since it could have sought dismissal of the complaint prior to the expiration of the 30 days, with no prejudice to reprosecution. *See United States v. Hillegas,* 578 F.2d 453 (2d Cir.1978). Concededly, the government's failure timely to file the information or indictment in this case did not spring from any evil motive. But, needless to say, when a defense motion, for example a motion to reduce sentence under Federal Rule of Criminal Procedure 35, is late, the government is quick to point out that time has expired. Meeting established time limitations is important and lack of attention or dilatoriness in observing them should not be encouraged by courts viewing such neglect tolerantly.

Appellant also argues that in considering the second factor the Magistrate placed too much emphasis on the lack of actual prejudice occasioned by the short delay. The legislative history of the statute indicates that prejudice to a defendant could properly be considered as one of the facts and circumstances of the case in deciding whether to dismiss with or without prejudice. *See* 120 Cong.Rec. 41,794–95 (1974), *reprinted in* Partridge at 220–22 (colloquy between Representative Dennis and Representative Cohen); *see also Bittle,* 699 F.2d at 1208. We find the Magistrate did not give undue consideration to the lack of prejudice to the defendant. Nonetheless, given the government's negligent conduct, as discussed, we conclude that the second factor militates in favor of dismissal with prejudice.

Turning to the third factor—the effect of dismissal on the administration of the Act—the Magistrate concluded that since appellant was tried within the time period called for in the statute, the administration of the Act was not severely impaired. This view ignores the statutory scheme established by Congress. Early drafts of the statute drew heavily upon the proposed ABA Standard 2.2 that provided for a single time limit "that would begin with arrest or summons prior to indictment and that was ... expedited to accommodate both pre-indictment

and post-indictment proceedings." Partridge at 24. The 1974 Senate committee version of the bill eliminated the single time limit and replaced it with a *separate* 30-day time limit for the filing of an information or indictment and a 60-day time limit to trial. With minor changes this scheme remained intact and became embodied in sections 3161(b) and (c). 18 U.S.C. § 3161(b) and (c) (1976). In its report, the House Judiciary Committee stated that the dismissal sanction "applies to both the period between arrest and indictment and between indictment and trial" H.R.Rep. No. 1508, 93d Cong., 2d Sess. 23, *reprinted in* 1974 U.S.Code Cong. & Ad.News 7401, 7416; *see* S.Rep. 1021, 93d Cong., 2d Sess. 21 (failure to meet these time restrictions would result in dismissal). It is evident from the foregoing that Congress envisioned separate time limits for the three separate stages of prosecution[1] and that the dismissal sanction was to apply to violation of any of the time limits, regardless of whether the others were ultimately satisfied. Any other construction would so seriously weaken the congressional scheme as to make it largely meaningless. Under such an unacceptable interpretation, a violation of an earlier time limit could be cured simply by bringing a defendant to trial within the overall time period established by the Act. Therefore, we view a violation of any of the Act's time limitations as negatively impacting on the administration of the Act.

Finally, we consider the effect of the dismissal of this prosecution on the administration of justice. As a deterrent to other would-be offenders, it seems relatively insignificant. Of greater significance to the administration of justice is the salutary effect of this Court's reaffirmance of Congress' basic purpose in enacting the Speedy Trial Act. In a Senate hearing on the Act, then Assistant Attorney General William Rehnquist, although expressing reservations regarding the sanction of mandatory dismissal, commented

> it may well be, Mr. Chairman, that the whole system of federal criminal justice needs to be shaken by the scruff of its neck, and brought up short with a relatively peremptory instruction to prosecutors, defense counsel, and judges alike that criminal cases must be tried within a particular period of time. That is certainly the import of the mandatory dismissal provisions of your bill.

Partridge at 17 (footnote omitted).

It must be remembered that a speedy trial is not only viewed as necessary to preserve the rights of defendants. Just as significant is the protection it accords to society's interest in bringing criminals to justice promptly. The trial of a criminal case should not be unreasonably delayed because a defendant might find it advantageous to play a waiting game hoping, for example, that government witnesses may disappear or become forgetful. Thus, the public has a strong interest in prompt trials because it reduces the defendant's opportunity to manipulate the criminal justice system. Moreover, society has a vital concern that an accused be quickly brought to trial in order to reduce the large number of crimes committed by those on bail. *See* H.R.Rep. No. 1508, 93d Cong., 2d Sess. 8, *reprinted in* 1974 U.S.Code Cong. & Ad. News 7401, 7402. Finally, unlike the speedy trial rights of an accused under the Sixth Amendment, *see Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972), the Act's purpose was to fix specific and arbitrary time limits within which the various stages of a criminal prosecution must occur. *See United States v. Iaquinta,* 674 F.2d 260, 264 (4th Cir.1982). We conclude therefore that the administration of justice will be served by dismissing this prosecution with prejudice.

---

1. The Act originally contained three time limitations—thirty days from arrest to the filing of an information or indictment, ten days from indictment to arraignment, and sixty days from arraignment to trial. In 1979 the Act was amended to merge the ten and sixty day periods into one seventy day period. Pub.L. No. 96–43, § 2, 93 Stat. 327, 328 (1979); *see* 18 U.S.C. § 3161(c)(1) (Supp. V 1981).

For the reasons stated appellant's conviction should be reversed and the complaint against him dismissed with prejudice.