**UNITED STATES of America,**

v.

**Stanley JERVEY, Defendant.**

**No. 85 CR 826–CLB.**

United States District Court,
S.D. New York.

Feb. 21, 1986.

Lawrence Urgenson, New York City, for defendant.

Rudolph Giuliani, U.S. Atty. (Vincent Briccetti, Asst. U.S. Atty.), New York City, for U.S.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Defendant, Stanley Jervey, by a motion filed November 4, 1985 seeks an order dismissing this indictment pursuant to the Speedy Trial Act, 18 U.S.C. § 3161 and the Sixth Amendment to the United States Constitution. Defendant contends that an unreasonable delay occurred between the time he entered into federal custody (from state custody on an unrelated matter) and the date that the grand jury indicted him. The Government does not dispute the relevant dates, but contends that most, if not all of the delay was within the statutory exclusions.

On March 20, 1984 a complaint was filed in this District against Mr. Jervey, charging him with stealing from the mail a check made payable to Ms. Clara Littman and Ms. Muriel Fishbein and depositing that check into his own bank account. Affidavit of Henry J. Picariello, Ex. A, Nov. 20, 1985. An arrest warrant issued thereon. Mr. Jervey was not arrested immediately, apparently because his whereabouts were unknown to federal authorities. However, on March 23, 1985 he completed serving a sentence in the Los Angeles County Jail, which was imposed for disturbing the peace and forgery. From that date until June 20, 1985 he remained in California state custody pending extradition to New York to answer unrelated charges in this State. The State of New York, however, failed to complete any effort to extradite Mr. Jervey within the 90 day period provided by the California Penal Law.

On June 20, 1985, and pursuant to the March 20, 1984 complaint and warrant, U.S. Marshals arrested Mr. Jervey and removed him to federal custody. On June 24, 1985 he was arraigned before a United States Magistrate in the Central District of California. The magistrate continued the matter until July 30, 1985 so that the Government and defense counsel could discuss the possibility of a plea in that district pursuant to Rule 20, F.R.Crim.P. These discussions bore no fruit, and after Mr. Jervey waived his right to a removal hearing, the Magistrate on July 31, 1985 issued a Warrant of Removal to this district.

Mr. Jervey completed his transcontinental journey on August 20, 1985 and appeared before Magistrate Gershon in this District on August 27, 1985. The grand jury returned its indictment on September 6, 1985.

The four count indictment charges Mr. Jervey with violations of 18 U.S.C. § 1708. Each count refers to checks that Mr. Jervey allegedly stole from the mail and deposited in his own bank account. Only Count One, however, refers to the check which was also the basis for the complaint filed in March of 1984.

The Speedy Trial Act provides that, "[a]ny information or indictment charging

an individual with the commission of an offense shall be filed within thirty days from date on which the individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). Other subsections of the Act provide for exclusions of time for certain delays regarded as reasonable by Congress.

■ One such subsection permits the exclusion of any "delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure." 18 U.S.C. § 3161(h)(1)(G). The Government contends that the time from June 24, 1985 to August 20, 1985 falls within this exclusion. This contention is partially correct. The period during which the California Magistrate continued the matter so that the attorneys might consider a disposition pursuant to Rule 20, F.R.Crim.P. does fall within this exclusion. Once defendant waived his right to removal proceedings and the Magistrate issued the Removal Warrant, the "Speedy Trial Clock" began again to accrue the days.

■ Section 3161(h)(1)(H) of the Act provides for the exclusion of "delay resulting from transportation of any defendant from another district ... *except that any time consumed in excess of ten days* from the date an order of removal is signed ... and the defendant's arrival at the destination *shall be presumed to be unreasonable.*" (Emphasis added).

This Court recognizes the reality of federal prisoner transportation. Under existing conditions, three weeks for this trip is neither unusual nor unexpected. The prison bus, which usually takes a circuitous route like that of a tramp steamer, need not run through the night. Security requirements affect when and where a day's journey must end. Congress did not intend that prisoners and their custodians travel on the regularly scheduled airlines as a customary means of travel. The statute is explicit, however, that a reasonable time

for a prisoner's removal is presumed by Congress to be no more than ten days.

This presumption, as part of a Congressional mandate, applies here unless some extraordinary event occurred in the case to make compliance with the directions of Congress unfeasible. Here, the Government has simply asserted, correctly, that no bad faith existed, and that it is common for defendants' transcontinental transportation to endure for more than ten days. Such ordinary institutionalized delay is not an excuse. When this Act was passed Congress knew all about the customs and practices of the prison bus. Congress remains capable of providing the Department of Justice the necessary funds to assure reasonable compliance with its direction, barring unusual circumstances, regardless of the distance between prisons.

■ The time between arrest and indictment in this case, after making the exclusions permitted under subsections (G) and (H), amounts to 32 days. This determination includes the following calculations: (1) Four days between June 20 (arrest) and June 24 (hearing in California); (2) Eleven of the twenty one days between July 31 (Removal Warrant signed) and August 20 (arrival in this district); and (3) Seventeen days between August 20 and to September 6 (indictment filed).

The Government's failure to indict defendant within the permissible amount of time (30 days) requires dismissal of Count One of the current indictment, which is the count based on the complaint.

Counts Two, Three and Four of the indictment are unaffected by the Speedy Trial Act because they are not based on the complaint pursuant to which Mr. Jervey was arrested. The Act requires dismissal only of "such charge against the individual contained in such complaint." 18 U.S.C. § 3162(a)(1). A panel opinion of our Court of Appeals recently interpreted this statute literally. It held that Congress did not intend that "the Act's dismissal sanction be applied to subsequent charges if they arise from the same criminal episode as those specified in the original complaint or were

known or reasonably should have been known at the time of the complaint." *United States v. Napolitano*, 761 F.2d 135, 137 (2d Cir.1985).

In determining the appropriate sanction, or deciding whether to dismiss infirm counts with prejudice, the statute requires us to consider "each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Act] and on the administration of justice." 18 U.S.C. § 3162(a); *See also United States v. Caparella*, 716 F.2d 976, 979–80 (2d Cir.1983). Using the word in its everyday sense, the theft of large sums of money from the mails is always a serious offense, but so are most federal crimes. However, the theft charged in Count One involved no instance of violence. Absent such an "exacerbating circumstance" we should not regard this offense as a "serious" crime as that word is used within the meaning of the Act. *See Caparella* at 980.

As indicated earlier, the facts and circumstances here indicate that the delay in transportation which is the main source of the problem here did not result from bad faith or different than ordinary and regular treatment of this defendant on the Government's part. Transportation of Mr. Jervey by prison bus from Los Angeles to New York City did not take an inordinate amount of time, having view to all the realities affecting the movement of prisoners, including fiscal restraints.

The Government's good faith, without more, cannot save this count. As our Court of Appeals has explained, "[m]eeting established time limitations is important and lack of attention or dilatoriness in observing them should not be encouraged by courts viewing such neglect tolerantly." *Id.* at 980. This Court also notes that defendant's presence is usually not required to present an indictment to the grand jury. Although in some instances it is necessary, this is not one of those cases.

The dismissal with prejudice sanction applies with equal force to both time limitations in the Act—the 60 day time limit from indictment to trial, as well as this 30 day limit for the filing of an information or indictment. *Id.* at 981. When, as often occurs, trial courts simply dismiss counts without prejudice for violation of the Speedy Trial Act, so as to permit the Government to reprosecute the claim simply by obtaining a new indictment, we participate in a charade. In so doing, we allow the Speedy Trial Act to operate in much the same fashion as did the Volstead Act. During National Prohibition, as is well remembered, the Wets had all the liquor they wanted and the Drys had that law they loved so well. Unless we are willing to accept and enforce Congressional policy as expressed in the Speedy Trial Act, by the application of its most meaningful sanction, dismissal with prejudice, the Act will become as meaningless as National Prohibition. Furthermore, any impetus existing for its repeal or modification will be lost.

The Department of Justice has the ability, if it will use it, to advise Congress that the 10 day standard of reasonableness in § 3161(h)(1)(H) is silly, or if not silly, at least inconsistent with the prevailing practices of the prison but authorized by Congress. When so advised, Congress may make the appropriate policy decision, and either enlarge the time regarded as presumably reasonable, or else appropriate sufficient additional money to the Department to allow for a more expeditious means of travel. Unless it does one or the other, this Court should not cover up the problem by dismissing without prejudice.

For the foregoing reasons Count One of the indictment is dismissed with prejudice. The Court will impanel a jury on March 3, 1986 at 9:30 A.M. for the trial of the remaining counts not being dismissed.

So Ordered.