**UNITED STATES of America, Appellant,**

v.

**Alvin August KRAMER, Appellee.**

No. 86–5217.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1986.

Decided Aug. 17, 1987.

Lynn E. Crooks, Asst. U.S. Atty., Fargo, N.D., for appellant.

Irvin B. Nodland, Bismarck, N.D., for appellee.

Before LAY, Chief Judge, and MAGILL, Circuit Judge, and HANSEN,* District Judge.

HANSEN, District Judge.

The United States appeals the district court's dismissal with prejudice of an indictment against Alvin August Kramer. The district court found that Kramer's right to a speedy trial pursuant to the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 had been violated. On appeal to this court, the United States argues that the district court abused its discretion by dismissing the indictment with prejudice, rather than dismissing the indictment without prejudice. We agree and reverse.

## I. Facts

In August, 1984, Kramer, the Executive Vice-President of the First Western Bank of Minot, North Dakota, resigned following discovery of banking irregularities. An investigation followed, and in January, 1985, the matter was prepared for presentation to a federal grand jury. The United States Attorney, however, chose to delay the matter, and did not present the matter to the grand jury until September, 1985.

On September 12, 1985, the grand jury returned a 17 count indictment against Kramer, charging him with 18 U.S.C. § 656, misapplication of bank funds, and 18 U.S.C. § 1005, false entries in bank records. Kramer initially appeared on September 26, 1985, and pleaded not guilty to the charges. The defendant filed discovery motions on October 8, 1985, which the district court ruled on December 12, 1985. Trial was set for January 13, 1986, before Senior Judge Bruce M. Van Sickle.

When the parties appeared for a pretrial conference on January 7, 1986, Judge Van Sickle recused himself based upon his uncertainty over senior judges' exemption from social security taxation. The only other available judge in the district at that time was Chief Judge Patrick A. Conmy, who had recently been a law partner of the defendant's counsel. Since it appeared that no qualified judge was available to preside at Kramer's trial, Chief Judge Conmy on January 8, 1986, continued the ac-

---

* THE HONORABLE DAVID R. HANSEN, United States District Judge for the Northern District of Iowa, sitting by designation.

tion up to 45 days, or until a judge could be assigned to the case. In his order, Judge Conmy waived the provisions of the Speedy Trial Act, finding that the interests of justice were served by granting the continuance, and the interests of the defendant and the public in having a speedy trial were outweighed.

Within a week it was apparent that Senior Judge Van Sickle was again presiding over cases, notwithstanding the continued uncertainty over social security taxation. In mid-February, the United States apparently learned that Judge Van Sickle was again presiding over this case, and was planning to commence the trial on February 27, 1986.

The defendant sought to dismiss the indictment on February 24, 1986, by filing a motion to dismiss in district court and seeking an extraordinary writ from this court pursuant to Fed.R.App.P. 21 in the event no qualified judge was available in the District of North Dakota. Kramer's motion was based upon several grounds, including failure to comply with the Speedy Trial Act. The government agreed that the case should be dismissed pursuant to the Speedy Trial Act, but maintained that dismissal should be without prejudice. Two days later, Senior Judge Van Sickle granted the motion based upon violations of the Speedy Trial Act, and dismissed the action "on its merits and with prejudice." Following the United States' motion for reconsideration, the district court confirmed the dismissal with prejudice.

## II. Discussion

 The Speedy Trial Act requires the trial of a federal criminal defendant to commence within 70 days of arraignment or of the filing of the indictment, whichever is later. 18 U.S.C. § 3161(c)(1). The Act lists a variety of delays that are excludable from the 70–day limit. 18 U.S.C. § 3161(h). If trial is not held within 70 days, on motion of the defendant the indictment must be dismissed. 18 U.S.C. § 3162(a)(2). The defendant has the burden of proving that dismissal is appropriate. *Id.* Although dismissal is mandatory when the Act is violated, the Act grants the trial judge the discretion to dismiss the indictment with or without prejudice. The Act does not accord a preference to either remedy. *United States v. Brown,* 770 F.2d 241, 243–44 (1st Cir.1985), *cert. denied,* 474 U.S. 1064, 106 S.Ct. 816, 88 L.Ed.2d 789 (1986); *United States v. Caparella,* 716 F.2d 976, 978–80 (2d Cir.1983); *United States v. Salgado-Hernandez,* 790 F.2d 1265, 1267 (5th Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 463, 93 L.Ed.2d 408 (1986); *United States v. Russo,* 741 F.2d 1264, 1266–67 (11th Cir. 1984).

The only evidentiary burden placed on a defendant by the Act involves the issue of whether dismissal should occur at all.

> If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant. *The defendant shall have the burden of proof of supporting such motion....*

18 U.S.C. § 3162(a)(2) (emphasis added). The Act is silent as to who bears the burden of showing which form of dismissal is appropriate.

 The Act does set out three factors to be considered in determining which form of dismissal is appropriate; (1) the seriousness of the offense; (2) the facts and circumstances which led to the dismissal, and (3) the impact of reprosecution on administration of the Act and justice in general. 18 U.S.C. § 3162. These factors were not discussed by the trial court, and after our review of these factors we conclude that the trial court abused its discretion in dismissing the action with prejudice. We examine each of the factors in § 3162 in turn.

### A. Seriousness of the offense

Kramer was charged on 17 counts, each had a possible maximum sentence of five years imprisonment and a maximum fine of $5,000. 18 U.S.C. §§ 656 and 1005. The indictment alleged that he misapplied bank funds in the amounts in excess of $365,000, and made false entries in bank records involving amounts in excess of $575,000. We conclude that the offenses charged against Kramer were serious. *See, e.g., United States v. Peeples,* 811 F.2d 849, 850

(5th Cir.1987) (three count indictment alleging an attempt to defraud in the amount of $500,000 punishable by up to five years in prison on each count was deemed a serious offense).

## B. Facts and circumstances leading to dismissal

This case suffers from the lack of an adequate factual record upon which a trial judge could exercise his discretion. While there are allegations and denials and counterallegations and counterdenials as to who did what when, there is little proof to go on and few, if any, fact findings made below. The government, the defendant, and the trial court all failed to clearly calculate the number of nonexcludable days between Kramer's arraignment on September 26, 1985, and the scheduled date of the commencement of trial on February 27, 1986.

From the clerk of the district court's docket (Record, p. 127–130), the following chronology can be established:

| Date | Event | Total Elapsed Non-Excludable Time |
|---|---|---|
| September 26, 1985 | Initial appearance of the defendant starts speedy trial clock. (18 U.S.C. § 3161(c)(1).) | |
| October 8, 1985 | Defendant files discovery motions. Speedy trial clock stops. (18 U.S.C. § 3161(h)(1)(F).) | 11 days |
| October 15, 1985 | Government resists discovery motions. Motions deemed submitted for purposes of calculating excludable time under 18 U.S.C. § 3161(h)(1)(J). (*Henderson v. United States*, 476 U.S. ——, ——, 106 S.Ct. 1871, 1876, 90 L.Ed.2d 299, 308 (1986).) | |
| November 14, 1985 | 30-day excludable period for determination of discovery motions ends. Speedy trial clock resumes ticking. (*Henderson, supra.*) | 11 days |
| December 5, 1985 | Pretrial set for 1/7/86 and trial set for 1/13/86. | |
| December 12, 1985 | Court rules on defendant's discovery motions. | 39 days |
| January 7, 1986 | Pretrial held. Judge Van Sickle recuses himself. | 65 days |

| Date | Event | Total Elapsed Non-Excludable Time |
|---|---|---|
| January 8, 1986 | Chief Judge Conmy enters order continuing case for 45 days and waiving Speedy Trial Act under § 3161(h)(8)(A). | 66 days |
| January 13, 1986 | Originally scheduled trial date. (The 70th day fell on Sunday, January 12th. Rule 45, Fed. R. Crim. P., would extend the time to the next day, Monday, January 13th.) | 70 days (66 days if order of continuance is valid) |
| February 20, 1986 | Notice of trial set for February 27, 1986. | 109 days (66 days if order of continuance is valid) |
| February 24, 1986 | Defendant files instant motion to dismiss. Speedy trial clock stops. § 3161(h)(1)(F). | 112 days (66 days if order of continuance is valid) |

Both sides were prepared and ready to go to trial on January 13, 1986, the originally scheduled trial date, when they met with Judge Van Sickle for the pretrial conference on January 7, 1986, the 65th day. It was only the unexpected recusal of Judge Van Sickle at that pretrial conference that necessitated reassignment to a different judge, and when the only other judge deemed available (Chief Judge Conmy) was himself unable to try the case, the order of continuance was entered by Chief Judge Conmy without motion by either party (defendant's brief before the district court, Record, p. 49).

The cause for the postponement of the original trial date was not the fault of the government, nor was the order of continuance entered at the government's request. Neither was the failure to comply with the Speedy Trial Act the result of a delay by the government to gain a tactical advantage, nor did it involve intentional noncompliance with the Act. *See United States v. Simmons*, 786 F.2d 479 (2d Cir.1986). Nor has there been a showing by Kramer that the government regularly or frequently failed to meet the Act's time limits. *See United States v. Salgado-Hernandez*, 790 F.2d at 1268.

The cause for this delay resulted from the perceived unavailability of a trial court

judge. We note no request was made of the Chief Judge of this court for the designation of another judge to try the case, pursuant to 28 U.S.C. § 291(b) and 28 U.S.C. § 292(b). As a result, on the day after the pretrial Chief Judge Conmy entered the order continuing the case relying on 18 U.S.C. § 3161(h)(8) as the basis for excluding the time utilized by the continuance. Notwithstanding this continuance, the parties appear to agree that the basis for the continuance was removed less than a week later, when Judge Van Sickle returned to the bench. However, no prompt reassignment of the case for trial occurred, and the parties were left in limbo until February 20, 1986, when the case was formally assigned for trial commencing on February 27 before Judge Van Sickle.

In dismissing the case with prejudice, the trial court did not focus on those circumstances that are revealed in the record, but rather focused on the political overtones involved with the case, and the alleged damage that the defendant had suffered. In reconsidering the order dismissing the action with prejudice, the trial court faulted the prosecution only for its delay in initially presenting the matter to the grand jury. Consideration of the pre-indictment delay is far less probative, however, than the circumstances occurring after indictment, when as here, the dismissal was pursuant to 18 U.S.C. § 3161(c)(1), for delays between the entry of a plea of not guilty and the trial. *See United States v. Phillips*, 775 F.2d 1454, 1456, n. 2 (11th Cir.1985) (there should be no relationship between government delinquencies in non-Speedy Trial Act areas and the court's findings under the Speedy Trial Act). The violation of the Speedy Trial Act was a result of the assumed unavailability of a trial court judge, an assumption to which the court itself contributed, rather than any delay caused by either of the parties, or delay caused by the government prior to indictment. The facts and circumstances of this case do not favor dismissal with prejudice.

## C. Impact of reprosecution on the administration of the Act and on the administration of justice

While dismissal with prejudice can be generally viewed as furthering the Speedy Trial Act's mandate of swift prosecution, *United States v. Russo*, 741 F.2d at 1267, Congress specifically rejected the sanction that all dismissals be with prejudice. In so doing, Congress specifically rejected the position recommended by the American Bar Association's speedy trial Standards and relied on by the dissent in this case. *United States v. Caparella*, 716 F.2d at 978–979; *United States v. Phillips*, 775 F.2d at 1456. Dismissal with prejudice in this case lacks any prophylactic effect as this is not a case where the court needs to deter repetition of prosecution actions which led to the violations of the Act, since none did.

We can find no more prejudice to the defendant which would result from reprosecution than has already occurred due to having been originally charged with the offense. *United States v. Phillips*, 775 F.2d at 1456. Kramer's general assertions of prejudice and the unproven allegations of post-dismissal prejudice contained in his brief before this court, while accepted by the dissent as fact, are not enough to support dismissal with prejudice. *See United States v. Peeples*, 811 F.2d at 852. While the defendant does not have any burden under the Act to show prejudice as a result of the delay, as the Act does not accord preference to either dismissal with or without prejudice, a showing of prejudice may be considered in determining whether dismissal should be with or without prejudice. *See United States v. Stayton*, 791 F.2d 17, 21–22 (2d Cir.1986). Likewise, the failure of the defendant to show any prejudice other than that occasioned by the original filing is a circumstance that should be considered in determining the type of dismissal warranted. *United States v. Peeples*, 811 F.2d at 852.

In his April 23, 1986 order denying reconsideration, Judge Van Sickle wrote:

Only the public is innocent, is not at fault in this circumstance.

An innocent public's interest in justice would be furthered by reprosecution in light of the serious nature of the charges against Kramer.

■ In summary, the serious nature of the charges against Kramer and the circumstances of this case weigh against dismissal with prejudice. The length of delay was not exorbitant in light of those circumstances which are disclosed by the record. The lack of prosecution fault for the delay and the defendant's minimal prejudice do not support dismissal with prejudice. Nor does dismissal with prejudice further the purpose of the Act and aid the administration of justice. The trial court's orders fail to justify dismissal with prejudice as those orders lack both any consideration of the statutory factors listed in 18 U.S.C. § 3162(a)(2) and a careful analysis or even a reliable recitation of the operative facts in this case which could arguably support the orders. While we recognize that the trial court's discretion is broad, it is not unbounded. An abuse of discretion occurs when a relevant factor that should have been given significant weight is not considered, when an irrelevant or improper factor is considered and given significant weight, or when all proper and no improper factors are considered, but the court in weighing those factors commits a clear error of judgment. *Kern v. TXO Production Corp.*, 738 F.2d 968, 970 (8th Cir. 1984). Here the trial court both failed to consider the relevant factors set forth in 18 U.S.C. § 3162, and gave significant weight to the pre-indictment delay, an irrelevant factor when determining whether dismissal should be with or without prejudice for post-indictment delay. After consideration of the factors set out in the Act, and review of the trial court's analysis, we are convinced that the court's dismissal with prejudice here was an abuse of discretion.

The judgment of the district court is REVERSED and the case REMANDED to the district court with instructions to dismiss the indictment without prejudice.

LAY, Chief Judge, dissenting.

I respectfully dissent. The majority commits both legal and factual error in holding that the district court's dismissal of the indictment with prejudice was an abuse of discretion. First, the majority indicates that the district court lacked an adequate factual record upon which to exercise discretion. If this is so, then there is not a factual predicate for this court to exercise its "discretion," either, and a proper course of action would be to remand the case to the trial court.

The fundamental error of the majority is that it concludes that on this record there is only one way the trial court could have exercised its discretion, that is, to dismiss the case without prejudice. The statute does not contemplate such a one-sided judgment. The majority concedes that the statute is silent as to whether dismissal should be with or without prejudice; the statute says only what factors should be weighed. If the trial court failed to pass on the statutory criteria or if it lacked an adequate record, then the case should be remanded for the court to weigh the proper factors or build the record. This court was not delegated the role of decision maker under the Speedy Trial Act. The district court was.

The majority also errs in its analysis of the factors listed for consideration.[1] One critical mistake by the majority is on the issue of prejudice to the defendant. It is implicit in the Speedy Trial Act's design and purpose that defendants are automatically prejudiced by any delay. While courts have stated that a showing of preju-

---

1. I agree with the majority's analysis of only one factor—the seriousness of the offense. *See supra* at II–A. Even then, while misapplication of bank funds is a serious offense, especially when large amounts are involved, the present case does offer some mitigating factors. First, the government concedes that the defendant did not profit from any misapplication of funds. Second, criminal charges were brought by the bank quite reluctantly. The misapplications al-

legedly took place prior to August 24, 1984, when the defendant was forced to resign. An audit was finalized shortly thereafter, but the bank declined to make any claim on its employee dishonesty bond. According to the defendant, the bank eventually brought charges only upon pressure by the North Dakota Department of Banking, and only in order to collect on the fidelity bond.

dice to the defendant may be properly considered in finding that a dismissal should be with prejudice, *see, e.g., United States v. Stayton,* 791 F.2d 17, 21–22 (2d Cir.1986) (citing *United States v. Caparella,* 716 F.2d 976, 980 (2d Cir.1983)); *United States v. Bittle,* 699 F.2d 1201, 1208 (D.C.Cir.1983) (citing legislative history), to interpret the defendant's failure to demonstrate prejudice as mandating a dismissal without prejudice overemphasizes the probative value of this factor. The defendant's burden under the Act is only to present proof supporting the motion for dismissal itself. *See* 18 U.S.C. § 3162(a)(2).

Moreover, the majority's analysis fails to consider some of the factual allegations made to the district court regarding prejudice to the defendant. For example, the defendant resigned from his subsequent position as director of a public works project because of the continuing uncertainty created by the various lengthy delays in his case. Alvin August Kramer is a 61–year-old man who has lived for over three years with the threat of an indictment and the injurious delays in bringing the case to trial. As the Supreme Court stated in *Strunk v. United States,* 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973):

> The speedy trial guarantee recognizes that a prolonged delay may subject the accused to an emotional stress that can be presumed to result in the ordinary person from uncertainties in the prospect of facing public trial or of receiving a sentence longer than, or consecutive to, the one he is presently serving—uncertainties that a prompt trial removes.

*Id.* at 439, 93 S.Ct. at 2263.

Once again, the majority's finding that the defendant will suffer no additional prejudice from the delay in prosecution slights the decisions made by the district court as the first-hand observer of the "impact of a reprosecution on the administration of [the Act] and on the administration of justice."

The majority's view of the "facts and circumstances leading to dismissal" is similarly misguided and incomplete. In its order denying reconsideration of its dismissal with prejudice, the district court acknowledged its own fault in "placing personal wellbeing [sic] ahead of the demands imposed by the circumstances surrounding the final scheduling of this particular case." The district court's actions were not the only ones involved, however. Earlier, the then-newly-appointed chief judge of the district court had disqualified himself from serving on the case. If the judge was disqualified to try the case, he clearly was disqualified from entering any order which would have substantive repercussions on the case. Yet the government failed to object to the order of the disqualified judge continuing the case, an act that resulted in the denial of the defendant's rights under the Speedy Trial Act. The factual circumstances surrounding this case also include a long delay caused by the government, for alleged political reasons, by its failure to proceed before the grand jury until months after the investigation had commenced.[2]

Notwithstanding these facts, the government urges that it was not at fault in causing the Speedy Trial Act violation and that any blame lies solely with the district court. The government stresses that it was ready for trial, but no trial judge was available. However, it was the burden of the government to protect its own record and to insure that the defendant's speedy

---

**2.** The government states that the defendant's former counsel, a former governor of the state of North Dakota, requested a delay of the indictment for fear that it would jeopardize funding of the Garrison Diversion project, a public works project in the state for which the defendant at that time served as director. The defendant's former counsel denies this allegation, and states that his interest was only in persuading the government not to indict the defendant at all. If in fact the government did delay bringing the indictment for political reasons, as it seems to admit, then serious concerns of misprision of the prosecution's office are raised.

In any event, the majority asserts that this preindictment delay is irrelevant to the present Speedy Trial Act analysis. I disagree; the delay is probative in the necessary consideration of what prejudice Kramer has suffered and will suffer if reprosecuted. The preindictment delay was one episode in an ongoing nightmare for the defendant, which apparently has contributed to his physical, professional, and emotional distress. The Speedy Trial Act was enacted in part to alleviate this type of harm.

trial rights were not violated.[3] The chief district judge may have erred in granting the continuance sought by the government and in not providing a district judge to hear the case. But the alleged error of the district court could have been obviated if the government had petitioned the chief judge of this court to designate a district judge to sit. *See* 28 U.S.C. § 292(b) (chief judge of circuit may, in public interest, designate any district judge of circuit to hold a district court in any district within the circuit); *id.* § 291(b) (chief judge of circuit may, in public interest, designate any circuit judge to hold district court within circuit). Instead, the government has sought to have the district court and now this court serve as guardian angels to prevent the government from committing error prejudicial to itself. For the government to avoid its own responsibilities by dwelling on the alleged wrongdoing of the district court is so dissembling that it approaches sheer hypocrisy.

Upon close analysis, it is clear that the majority has erroneously failed to recognize both the government's culpability and the obvious prejudice to the defendant in this case. The majority opinion additionally undermines the policy behind the Speedy Trial Act by holding, in effect, that the district court has abused its discretion unless it resolves all factual issues in the way that the court of appeals desires. This approach belittles the delegation of statutory discretion to Article III district judges by Congress.

The concerns expressed by the American Bar Association's Speedy Trial Task Force are accurate here:

> [T]he remedy for failure to bring a defendant to trial before the running of time for trial should be absolute discharge. * * * [I]f, following undue delay in going to trial, the prosecution is free to commence prosecution for the same offense subject only to the running of the statute of limitations, the right to a speedy trial is largely meaningless. Moreover, prosecutors who are free to commence another prosecution later have not been deterred from undue delay.

ABA Standards for Criminal Justice 12–4.1, commentary at 12–43 (1978).[4]

Given the factual setting in which this case arose, I would endorse the views expressed by the Second Circuit in *Stayton:*

> [N]either the Speedy Trial Act nor the administration of justice in general would be advanced by excusing the type of administrative neglect that occurred here. * * * "As a deterrent to other would-be offenders, [the dismissal of this prosecution] seems relatively insignificant. Of greater significance to the administration of justice is the salutary effect of this Court's reaffirmance of Congress' basic purpose in enacting the Speedy Trial Act."

791 F.2d at 22 (quoting *Caparella,* 716 F.2d at 981).

The majority's reversal here is a plain miscarriage of justice. The district court's dismissal with prejudice is not a simple example of letting the criminal go free because the constable has blundered. Rather, this is a case of government dereliction that violated the basic right of a presumedly-innocent accused to a speedy trial, as specifically provided by Congress in the Speedy Trial Act.

---

**3.** The Supreme Court addressed the issue of governmental culpability in the Sixth Amendment context in *Strunk:*

> Unintentional delays caused by overcrowded court dockets or understaffed prosecutors are among the factors to be weighed less heavily than intentional delay, calculated to hamper the defense, in determining whether the Sixth Amendment has been violated but * * * they must "nevertheless ... be considered since the ultimate responsibility for such circum-

stances must rest *with the government* rather than with the defendant."

*Id.* at 436, 93 S.Ct. at 2262 (quoting *Barker v. Wingo,* 407 U.S. 514, 531, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972)) (emphasis added).

**4.** It is true that in passing the Speedy Trial Act Congress rejected the ABA call for mandatory dismissal with prejudice. However, in the present context, the rationale underlying the ABA position remains persuasive.