**UNITED STATES of America,**
**Appellant,**

v.

**Gilbert HERNANDEZ,**
**Defendant–Appellee.**

**No. 1277, Docket 88–1089.**

United States Court of Appeals,
Second Circuit.

Argued July 20, 1988.

Decided Dec. 12, 1988.

Thomas D. Anderson, Burlington, Vt., Asst. U.S. Atty. for D. Vt. (George J. Ter-

williger, III, U.S. Atty. for D. Vermont, Burlington, Vt., of counsel), for appellant.

Oscar B. Goodman, Las Vegas, Nev. (Goodman, Stein & Quintana, Las Vegas, Nev., of counsel), for defendant-appellee.

Before ALTIMARI and MAHONEY, Circuit Judges and KORMAN, District Judge.*

KORMAN, District Judge:

On July 24, 1987, Gilbert Hernandez was arrested at his home in Las Vegas, Nevada, pursuant to a warrant issued on July 17, 1987 by Chief Judge Coffrin of the United States District Court for the District of Vermont. Subsequently, on July 28, 1987, following a detention and removal hearing, removal was found to be warranted and Mr. Hernandez was "ordered to appear in the United States District Court for the District of Vermont at Burlington, Vermont on August 14, 1987 at 1:30 P.M. before the United States Magistrate."

Mr. Hernandez, who was released on bond, appeared before the United States Magistrate in Vermont on August 13, 1987 and was indicted on September 10, 1987. The three count indictment charged him with conspiring to distribute cocaine and of using a telephone on two separate occasions to facilitate the distribution of cocaine.

On January 6, 1988, Judge Billings granted the defendant's motion to dismiss the indictment because the forty-eight day delay between his arrest and indictment violated the Speedy Trial Act. Specifically, 18 U.S.C. § 3161(b) provides that an indictment must be filed within thirty days from the date of arrest. Judge Billings acknowledged that § 3161(h)(1)(G) of the Speedy Trial Act excludes from the thirty day period "delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure." 18 U.S.C. § 3161(h)(1)(G) (1982). In his judgment, however, this pro-

vision did not provide for sufficient excludable delay because "the only period of 'delay resulting from any *proceeding* relating to the ... removal of [the] defendant' ... was the four-day period between the arrest and the removal order." *United States v. Hernandez*, 676 F.Supp. 63, 64 (D.Vt.1988) (emphasis in original). Based on this premise, Judge Billings found that the indictment should have been returned on August 27, 1987.

Having determined that the fourteen day delay violated the Speedy Trial Act, Judge Billings then turned to the issue whether the indictment should be dismissed with prejudice. While the defendant was concededly charged with "serious offenses", this was found to be the only factor that weighed in favor of a dismissal without prejudice. Characterizing the delay as "a serious, though not lengthy, violation of the Act," *id.* at 65, Judge Billings held that:

Even if the delay resulted from a good-faith miscalculation, the negligence would "militate in favor of dismissal with prejudice." *United States v. Caparella*, 716 F.2d 976, 980 (2d Cir.1983). Additionally, the administration of the Speedy Trial Act is best served by a dismissal with prejudice. To dismiss the indictment here without prejudice after such a clear violation of the Act, would be to participate in a "charade" of enforcement of the Act. [*United States v.] Jervey*, 630 F.Supp. [695,] 698 [ (S.D.N.Y.1986) ]. The ends of justice also weigh in favor of dismissal with prejudice by furthering Congressional purpose behind the Act, and by ensuring strict compliance by the government. *See Caparella*, 716 F.2d at 981. After balancing all the factors listed in 18 U.S.C. § 3162(a)(1), the Court concludes that the indictment should be dismissed with prejudice.

*Id.*

The United States appeals, pursuant to 18 U.S.C. § 3731, from the dismissal of the indictment with prejudice.

---

* The Honorable Edward R. Korman, United States District Court for the Eastern District of New York, sitting by designation.

I

The threshold issue is whether the forty-eight day delay between the defendant's arrest and the filing of the indictment violates the Speedy Trial Act. Because an indictment must be returned within thirty days of arrest, our analysis turns on the extent to which the period between the defendant's arrest in Nevada and his initial appearance in Vermont constitutes excludable time. The two periods of excludable delay that bear on this issue are set out in § 3161(h)(1) as follows:

> The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

> \* \* \* \* \* \*

> (G) delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure;

> (H) delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date of an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable;

18 U.S.C. §§ 3161(h)(1)(G), (H) (1982).

When it was originally enacted as part of the Speedy Trial Act in 1974, § 3161(h)(1)(G), upon which Judge Billings focused, did not address the issue of delays resulting from removal proceedings. Instead, it provided that "delay resulting from proceedings relating to transfer from other districts under the Federal Rules of Criminal Procedure" shall be excluded in computing the time within which an information or indictment must be filed or in computing the time in which a trial must commence. 18 U.S.C. § 3161(h)(1)(G) (1974).

Transfer proceedings, pursuant to Fed.R. Crim.P. 20, normally do not involve the transportation of a defendant to a district in which his presence is sought for the purpose of arraignment or trial. On the contrary, the purpose of Rule 20 is to allow a defendant to plead guilty in the district in which he has been apprehended. The delays in such proceedings normally involve the period of time necessary to effectuate the transfer of the case from the charging district to the district in which the plea will be taken.

Section 3161(h)(1)(G), as originally enacted, derived from a concern of the Department of Justice that, if a defendant chooses to dispose of his case pursuant to Rule 20 and then refuses to plead guilty after the arrival of the transfer papers, several weeks of trial preparation will be lost while the defendant is returned for arraignment and trial in the indicting district. The Justice Department advised Congress that "[t]his situation could be remedied by amending § 3161 to provide an exclusion for the time consumed by an aborted Rule 20 proceeding." The suggestion was, therefore, made that excludable delay include "delay resulting from proceedings under Rule 20, F.R.Crim.P." [1]

■ This history plainly supports the argument that the phrase "delay resulting from proceedings relating to transfer from other districts," as it appeared in the original version of § 3161(h)(1)(G), encompasses the time consumed in returning the defendant to the district in which he was charged if the transfer proceedings did not culminate in a guilty plea. Accordingly, when Congress amended § 3161(h)(1)(G) in 1979 to provide for the exclusion of delay resulting from any proceeding related to the removal of a defendant, the object of which is to return a defendant to the district in which he is charged, this period of excludable delay necessarily included the time re-

---

**1.** *See* Letter to Mark Gitenstein,. Counsel, Subcommittee on Constitutional Rights, Senate Committee on the Judiciary, from Richard A. Hauser, Attorney–Advisor, Office of Criminal Justice, U.S. Department of Justice, June 12, 1973, at 1973 Senate Hearings 196, *reprinted in* A. Partridge, Legislative History of Title I of The Speedy Trial Act of 1974, at 103 (1980).

quired to effectuate the return of a defendant.

This reading of § 3161(h)(1)(G) is not undermined by the contemporaneous addition in 1979 of § 3161(h)(1)(H), the second period of excludable delay that arguably relates to the issue here. Section 3161(h)(1)(H) provides that "delay resulting from transportation of any defendant from another district" shall be deemed excludable "except that any time consumed in excess of ten days from the date of an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable." 18 U.S.C. § 3161(h)(1)(H) (1982). This language—specifically the "transportation of any defendant"—applies to defendants who are in custody. While the legislative history of the 1979 amendments to the Speedy Trial Act does not appear to contain any specific reference to § 3161(h)(1)(H) beyond a paraphrase of its language, *see* A. Partridge, Legislative History of Title I of the Speedy Trial Act of 1974, at 96–115 (1980), the inclusion of a ten-day cap for the transportation of such defendants, without a corresponding limitation where defendants are released and permitted to travel on their own, reflects an obvious concern with prolonged delays in the transportation of incarcerated defendants who are under the government's control and who are being deprived of their liberty.

We observe that the Guidelines for the Speedy Trial Act, which were adopted by the Judicial Council for the Second Circuit on January 16, 1979 [hereinafter Guidelines] and which were the subject of favorable comment by the Senate Judiciary Committee when the Speedy Trial Act was amended later the same year,[2] draw the same distinction between defendants who are incarcerated and those who were released. Specifically, the Guidelines provide:

> Where no indictment or information is pending, the time between the defendant's arrest in another district on a complaint from this district and his appearance (or arrival) in this district is excluded from the arrest-indictment or information interval. *Where there has been an unreasonable delay in the production of a defendant in custody, the period of delay found by the Court to be unreasonable shall not be excluded.* See I(A) supra.

§ II(F)(1) (emphasis supplied).

The defendant correctly observes that Congress chose to place a ten-day cap on the excludable period of delay for transportation of a defendant to the district to which removal has been ordered. Such a cap departs from the Guidelines only to the extent of defining what is a reasonable period of excludable delay for the transportation of a defendant in custody. The distinction in the Guidelines between the production of defendants in custody and those who are released appears to us to have remained unchanged.[3]

We do not, however, draw from this distinction an intent on the part of Congress or the drafters of the Guidelines to allow an open-ended period of delay in cases where a released defendant has been permitted to make his own way to the district to which removal has been ordered. The Speedy Trial Act and the Guidelines expressly focus on the transportation of defendants who are incarcerated because time is of the essence where a defendant is

---

**2.** S.Rep. No. 212, 96th Cong., 1st Sess. 20 (1979) observed that:

> The Second Circuit has interpreted the Act and its legislative history in a creative manner which preserves its objectives and specifically addresses most of the problems which have hindered its smooth implementation.... After careful reading, the Committee is of the opinion that the Second Circuit guidelines are worthy of consideration by all the districts as a model for future implementation, consistent with presently-contemplated changes. The

Committee invites every circuit council and district chief judge to give them the closest attention possible.

**3.** We have previously held that the Guidelines "are entitled to appropriate respect" in construing the Speedy Trial Act. *United States v. Todisco,* 667 F.2d 255, 260 (2d Cir.1981), *cert. denied,* 455 U.S. 906, 102 S.Ct. 1250, 71 L.Ed.2d 444 (1982); *see United States v. Roman,* 822 F.2d 261, 265 (2d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 347, 98 L.Ed.2d 373 (1987).

deprived of his liberty and because delay is inevitable where a defendant is being transported by United States Marshals. *See, e.g., United States v. Jervey,* 630 F.Supp. 695 (S.D.N.Y.1986). On the other hand, the failure of Congress and the drafters of the Guidelines to address specifically the issue of excludable delay where a defendant is not in custody may simply reflect the fact that unreasonable delays in procuring the return of such defendants have never been a problem.

■ A construction of § 3161(h)(1)(G) to allow an open-ended period of excludable delay for defendants who are not in custody would conflict with the purpose of the Speedy Trial Act and the obligation of the United States Attorney "to obtain promptly the defendant's presence in this district by way of removal." Guidelines, § I(A)(1)(b); *cf.* 18 U.S.C. § 3161(h)(3) (1982).[4] Accordingly, although we decline to read into the Speedy Trial Act an explicit cap for cases such as this, our holding should not be construed to sanction an open-ended period of excludable delay. We hold only that the Speedy Trial Act was not violated because the delay between the order of removal and the date the defendant was directed to report to the District of Vermont (a date suggested by the United States Attorney) was reasonable under the circumstances.

## II

While we have concluded that the Speedy Trial Act was not violated, a contrary conclusion would not require the dismissal of the indictment with prejudice here. Section 3162(a)(1) provides that in deciding whether the indictment should be dismissed with or without prejudice, "the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances ... which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of jus-

tice." 18 U.S.C. § 3162(a)(1) (1982). Moreover, although prejudice to the defendant was not specifically referred to in § 3162(a)(1), "there is little doubt that Congress intended this factor to be relevant for a district court's consideration." *United States v. Taylor,* —— U.S. ——, 108 S.Ct. 2413, 2418, 101 L.Ed.2d 297 (1988).

■ The legislative history of the Speedy Trial Act also "confirms that, consistent with the language of the statute, Congress did not intend any particular type of dismissal to serve as the presumptive remedy for a Speedy Trial Act violation." *Taylor,* 108 S.Ct. at 2418. On the contrary, "the decision to dismiss with or without prejudice was left to the guided discretion of the district court, and ... neither remedy was [to be] given priority." *Id.* at 2418.

■ Whether the district court abused its discretion, the issue to be resolved here, depends "on the bounds of that discretion and the principles that guide its exercise." *Taylor,* 108 S.Ct. at 2419. Where, as here, a judgment by the district court "must be arrived at by considering and applying statutory criteria" to the facts as the district court finds them, a reviewing court must "undertake more substantive scrutiny" than would otherwise be the case, "to ensure that the judgment is supported in terms of the factors identified in the statute." *Id.* at 2419–20. After carefully reviewing the record here under this standard, we conclude that the dismissal of the indictment with prejudice was erroneous.

Judge Billings recognized that "[t]he defendant, here, is charged with serious offenses" and that this "weighs in favor of a dismissal without prejudice." 676 F.Supp. at 65. On the other hand, he concluded, this consideration was "counterbalanced by a serious, though not lengthy, violation of the Act." *Id.* The difficulty we have with this analysis is that the length of the delay is necessarily "a measure of the seriousness of the speedy trial violation." *Taylor,*

---

**4.** 18 U.S.C. § 3161(h)(3), which makes excludable "[a]ny period of delay resulting from the absence or unavailability of the defendant," 18 U.S.C. § 3161(h)(3)(A) (1982), provides that a defendant shall be considered unavailable "whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial." 18 U.S.C. § 3161(h)(3)(B) (1982).

108 S.Ct. at 2421. While long delays tend to increase the likelihood of "presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty," *id.*, short delays of the kind present here do not become "serious" violations of the Speedy Trial Act unless there is some resulting prejudice to the defendant. The fourteen-day delay here borders on being *de minimis* and plainly did not result in any prejudice to the defendant.

Judge Billings did observe that there was "at least a colorable argument that the government obtained a tactical advantage during the period of delay by conferring with defendant's unindicted co-conspirator." 676 F.Supp. at 65. It is unclear whether this observation was intended to suggest an element of prejudice to the defendant or an improper reason for the delay. Whichever is the case, there is no evidence that indictment was deliberately delayed to allow the government to obtain any such advantage, that the conference with the co-conspirator could not have been held earlier or that the delay prejudiced the defendant's ability to prepare for trial.

■ More significantly, the record seems clear that the indictment was returned twenty-eight days after the defendant's first appearance in the District of Vermont because the Assistant United States Attorney was operating under the good faith belief that the entire period from July 28, 1987 until August 13, 1987, constituted excludable delay and that she had thirty days from August 13, 1987 to obtain an indictment. Under these circumstances, the reason for the delay does not provide a basis for dismissal with prejudice. On the contrary, in the absence of a factually supported finding of bad faith or a pattern of neglect by the local United States Attorney, an "isolated unwitting violation" of the Speedy Trial Act cannot support a decision to dismiss with prejudice. *Taylor*, 108 S.Ct. at 2421.

Judge Billings' decision to dismiss with prejudice, even though the delay was not lengthy and "[e]ven if [it] resulted from a good faith miscalculation," rested largely on his belief that the alternative "would be to participate in a 'charade' of enforcement of the Act" and dismissal with prejudice would further the "Congressional purpose behind the Act" because it would ensure "strict compliance by the government." 676 F.Supp. at 65. While there may have been some support for this approach, *see United States v. Caparella*, 716 F.2d 976, 980–81 (2d Cir.1983), it cannot be reconciled with the holding of the Supreme Court in *Taylor*, which was decided after the indictment here was dismissed.

Observing that "[i]t is self-evident that dismissal with prejudice always sends a stronger message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pre-trial delays," the Supreme Court in *Taylor* reiterated that the Speedy Trial Act "does not require dismissal with prejudice for every violation" and that dismissal without prejudice is "not a toothless sanction." *Taylor*, 108 S.Ct. at 2422. In words that are particularly applicable here, the Supreme Court continued:

> At bottom, the District Court appears to have decided to dismiss with prejudice in this case in order to send a message to the Government that unexcused delays will not be tolerated. That factor alone, by definition implicated in almost every Speedy Trial Act case, does not suffice to justify barring reprosecution in light of all the other circumstances present.

*Id.* at 2423.

Judge Billings' understandable desire to ensure strict compliance with the Speedy Trial Act cannot, under the analysis in *Taylor*, justify a dismissal with prejudice here. The offense was concededly serious, the delay was concededly short, there was no evidence of bad faith or a pattern of neglect, and the defendant failed to demonstrate any prejudice from the delay.

Accordingly, we reverse the judgment dismissing the indictment and remand the case to the district court for further proceedings consistent with this opinion.