UNITED STATES of America, Plaintiff,

v.

Sam T. IAQUINTA, Velma E. Shine, Defendants.

UNITED STATES of America, Plaintiff,

v.

Sam Thomas IAQUINTA, Jr., Defendant.

Crim. Nos. 80–00053–E–01, 80–00053–E–02 and 81–00011–E.

United States District Court, N. D. West Virginia, Elkins Division.

June 9, 1981.

Stephen G. Jory, U. S. Atty., Elkins, W. Va., for plaintiff.

James A. Esposito, Fairmont, W. Va., and Franklin D. Cleckley, Morgantown, W. Va., for defendants.

## ORDER

MAXWELL, Chief Judge.

Defendants were jointly indicted on December 10, 1980, for alleged violations of the federal drug laws. On April 10, 1981, defendant Sam Iaquinta, Jr. alone was indicted for illegal possession of a firearm.

Defendants entered pleas of not guilty and have moved to dismiss the indictments as being untimely in violation of section 3161(b) of the Speedy Trial Act (18 U.S.C. § 3161 et seq.). Evidence was presented in support of and in opposition to this motion and, with respect to the federal drug charges, the parties have stipulated the following facts:

"1. On July 31, 1980 TF/A McGinnis and S/A Brightwell met Mark Williams, an informer. The federal agents were introduced to Mark Williams by Sgt. McCarthy of Morgantown. McCarthy is not a federal agent but is a member of the West Virginia Department of Public Safety.

"2. On August 4, 1980, Mark Williams, Troopers Lucas and Plantz, TF/A McGinnis and S/A Brightwell met and at approximately 6:30 p.m. had Mark Williams to call the residence of the defendants. Mark Williams talked with defendants Shine and at 8:35 p.m. allegedly purchased ¼ of an ounce from defendant Shine.

"3. On August 7, 1980 at approximately 1:30 p.m. Mark Williams was given $12,-000.00 with which to make a purchase from the defendants. Of the total amount, the federal government contributed $7,000.00 (S/A Rinehart) and $5,000.00 from Trooper Lefler.

"4. On August 7, 1980 the following events took place:

(a) an attempted sale of cocaine for $12,-000.00;

(b) arrest of the defendants pursuant to a state of West Virginia warrant;

(c) a state search warrant was secured and executed.

"5. According to the U. S. Attorney, Steve Jory, the following occurred:

(a) On November 10, 1980, the U. S. Attorney for the Northern District of West Virginia first contacted the prosecuting attorney of Marion County, Frank C. Mascara, in reference to this criminal prosecution.

(b) On December 5, 1980, the above prosecutors met and discussed the case.

"6. On December 10, 1980, a federal indictment was returned against the defendants."

McGinnis, Lucas, Plantz and Lefler are state law enforcement employees, while Brightwell and Rinehart are federal agents.

Essentially, defendants assert that under the provisions of the Speedy Trial Act the federal government, evidenced by the cooperation, assistance and involvement of its law enforcement agents, should be charged with the arrest of defendants on August 7, 1980.

Testimony adduced at the hearings in this court revealed that the federal agents had a substantial involvement, not only in the initial investigation, but also in the arrest and questioning of the defendants on August 7,

1980, after the defendants were in custody. Significantly, defendants also point out that although the arrest on drug charges was made by a member of the West Virginia Department of Public Safety, pursuant to a state arrest warrant, a state preliminary hearing was never conducted as required by West Virginia Code section 62–1–8 (1977 Replacement Vol.). This is verified by the affidavit of Marion County Magistrate filed with defendant's motion to dismiss the drug charges. Several state court preliminary hearings were scheduled, but for reasons not apparent the state failed to appear or to request continuances. Further, a state grand jury met on November 10, 1980, but the prosecutor did not seek an indictment. In fact, it appears that the prosecutor had not prepared an indictment to submit to the state grand jury. The prosecutor testified that he had a telephone discussion with the United States Attorney on the day the state grand jury convened and later met with the United States Attorney and two Drug Enforcement agents on December 5, 1980.

On December 10, 1980, more than four months after their initial arrest, defendants were indicted by a federal grand jury for drug related offenses.

Defendants contend the facts demonstrate that the drug offense investigation was a joint state-federal investigation, but that no action was taken on the state arrest warrant until the federal indictment was returned. Defendants allege that the State of West Virginia did not have a substantial interest in prosecuting defendants, and that the November 10–December 10, 1980 shift of drug related charges by the State was a pretext to avoid the federal Speedy Trial Act time requirements.

Moreover, during the August 7, 1980 arrest, federal agents seized a firearm from defendant, Sam T. Iaquinta. It is alleged that, at that time, the federal agents knew the firearm was illegally possessed because the agents were aware that defendant had a prior felony conviction. A later search of defendant's residence resulted in discovery of six other firearms.

On October 30, 1980, two federal agents met with defendant and his attorney and attempted to discuss potential charges for illegal possession of a firearm. The U. S. Attorney informed defendant's attorneys by letter of January 27, 1981, that the Bureau of Alcohol, Tobacco, and Firearms had recommended prosecution and on April 10, 1981, a federal grand jury returned an indictment against defendant Iaquinta alleging the illegal possession of a firearm.

Defendant Iaquinta again asserts, for the reasons discussed above, that the August 7, 1980, arrest set in motion the provisions of the Speedy Trial Act and that this indictment should also be dismissed as untimely, to-wit, for failure to indict defendant within 60 days of his arrest. The firearms charges were the result of an almost exclusive federal investigation of a federal offense.

The government endeavors to justify the belated "firearms" indictment on grounds that the investigation was complex and lengthy and that the investigation was conducted in good faith. With respect to the December 10, 1980 "drug charges" indictments, the government emphasizes that the August 7, 1980 arrests were normal and proper state arrests and the decision to pursue federal drug charges against these defendants is completely within the exercise of prosecutorial discretion.

The Court need not inquire into the motives for the federal indictment of defendants. The facts and circumstances of these cases are governed by the Speedy Trial Act, 18 U.S.C. § 3161 et seq., and the provisions of that Act are specific and the sanctions under Section 3162 are mandatory.

The Speedy Trial Act of 1974 was the result of lengthy Congressional Committee hearings and debates and the Act was designed to implement and enforce the Sixth Amendment right to a speedy trial and to ensure uniformity of the same throughout the nation. H.R.Rep.No.93–1508, P.L. 93–619, 1974 U.S.Code Cong. and Adm.News, p. 7401.

The time periods of Section 3161 were phased in beginning July 1, 1975, with the

final periods specified in the Act being effective July 1, 1979. Section 3161(b) requires that an indictment "shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." The section further provides that if no grand jury has been in session during this thirty day period, the period of time for indictment will be extended an additional thirty days. Even then, the Congressional committee found that "every effort should be made to indict individuals within the time limits provided, invoking this extension only where necessary." *Id.* at p. 7423. Section 3162, effective July 1, 1980, provides that the sanction for violation of section 3161(b) is dismissal of the indictment.

Reading the record as a whole, the Court must find that the arrest of defendants on August 7, 1980 set into motion the applicable time periods of the Speedy Trial Act with respect to all federal offenses that resulted from or were "in connection" with the circumstances bringing about the arrest. The Court recognizes the laudable practicalities inherent in the varying degrees of cooperation between federal and state law enforcement activities and there is no legitimate question of the proper utilization of that cooperation here. In this particular situation the federal involvement in August, 1980 was far reaching and much more extensive than would be normally undertaken by federal agents in merely assisting a state prosecution. The sole fact that defendants were arrested upon a state arrest warrant, perhaps as a matter of expediency, cannot be magnified to circumvent the congressional mandates of the Speedy Trial Act. Here, no state proceedings were pursued beyond a search and the arrest in which the federal authorities actively participated and no state indictment was returned—only federal indictments.

It is clear that the pendency of state proceedings would not have placed a cloud over the federal government's timely prosecution of the defendants on federal drug and firearm charges since successive state and federal prosecutions do not amount to double jeopardy. *U.S. v. Lanza,* 260 U.S.

377, 43 S.Ct. 141, 67 L.Ed. 314 (1922), *Abbate v. U. S.,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959). Therefore, while the Court recognizes the concept of dual sovereignty, it is also cognizant of the fact that the federal government was under no duty or compulsion to *delay* its prosecution until after the State indicated its intention not to proceed further on the state arrest.

While considerable testimony was elicited concerning the investigation prior to, at the time of and immediately following the arrest of the defendants on August 7, 1980, the record before the court demonstrates a remarkable, and most important, "time lapse", namely, the time between August 7, 1980 and November 10, 1980. The United States had ample opportunity to present testimony or other evidence to clear away or explain, either wholly or in part, the activities that occurred, or did not occur, during this significant "time lapse". It is entirely conceivable that the Justice Department was not made aware of the investigation and arrest of the defendants until at or near the time the United States Attorney, representing the Department of Justice, communicated with the state prosecutor on November 10, 1980.

The Court in this instance must respond to the issues raised by the record and omissions that are before the Court. The Court, on the record before it in these proceedings, must reserve to another day the question of whether law enforcement activities by a co-equal department of the Executive Branch is binding on the Justice Department, in the application of the Speedy Trial Act; or, whether the provisions of the Speedy Trial Act are binding upon the Justice Department only from the point in time when the Justice Department has actual knowledge of the federal law enforcement activity.

Here, under the facts and record before the Court, there is no alternative but to charge the United States with knowledge of the arrests of the defendants when the same actually occurred on August 7, 1980.

Issues under the Fifth and Sixth Amendments are generally governed by the elastic balancing test enunciated in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), but the Speedy Trial Act's time periods must be subjected to a literal interpretation. Section 3161(b) leaves no room for discretion and its very aim is to ensure uniformity in guaranteeing criminal defendants their right to a prompt disposition of criminal charges and to promote a sense of security and safety by requiring the accused to answer for their actions in an expeditious manner.

Furthermore, once a violation of section 3161(b) has been found, the indictment must be dismissed in accordance with sections 3162 and 3163. Section 3162 states that the action may be dismissed with or without prejudice and specifies the factors to be considered when determining the proper course of action. The legislative history indicates that dismissal without prejudice should only be granted in rare instances, and the rule will be dismissal with prejudice. Specifically, the Committee quoted the position of the ABA Advisory Committee:

> The position taken here is that the only effective remedy for denial of speedy trial is absolute and complete discharge. If following undue delay in going to trial, the prosecution is free to commence prosecution again for the same offense, subject only to the running of the statute of limitations, the right to speedy trial is largely meaningless. Prosecutors who are free to commence another prosecution later have not been deterred from undue delay. (*Standards,* Approved Draft, 1968, pp. 40–41).

Legislative History, *supra,* p. 7430. The Committee stated further that "the dismissal is *mandatory* but not *automatic,* since the defendant is expressly required under section 3162(a)(2) to move for dismissal." *Id.* at 7431. Here, defendants have timely moved to dismiss the indictments for violation of section 3161(b). After considering the factors enumerated in the statute, the Court must conclude that there has been a violation of the Act and that the mandated sanction is dismissal with prejudice. Accordingly, it is

ORDERED that the Motion to Dismiss of Defendants Sam T. Iaquinta (80–00053–E–01, 81–00011–E) and Velma E. Shine (80–00053–E–02) be, and the same are hereby GRANTED, with prejudice.

The Court does not express or imply an opinion as to what, if any, effect this dismissal may have on the state prosecution involving similar charges. The dismissal here is limited to the federal charges only and for the reasons stated.