**UNITED STATES of America**

**v.**

**John D. JONES a/k/a Jack Jones.**

**Crim. A. No. 82–366–1.**

United States District Court,
E.D. Pennsylvania.

Jan. 17, 1985.

JoAnne A. Epps. Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Stanford Shmukler, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Defendant John D. Jones seeks dismissal with prejudice of the indictment against him in this action on the grounds that the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, has been violated. The government does not oppose the defendant's motion to dismiss, but requests that the indictment be dismissed without prejudice. After a careful review of the circumstances of this case, I conclude that the indictment should be dismissed with prejudice.

Defendant was indicted on November 9, 1982 on two counts of sale of goods stolen from interstate commerce, three counts of receipt of motor vehicles stolen from interstate commerce, and three counts of mail fraud. On December 22, 1982, I entered an order disqualifying defendant's counsel, Wallace C. Worth, Jr., because Mr. Worth had previously represented a key government witness. Defendant filed an appeal from that order in the Court of Appeals for the Third Circuit on December 30, 1982. On November 30, 1983, the Court of Appeals entered a Judgment Order affirming my order of disqualification. Defendant then filed a petition for writ of certiorari in the Supreme Court. The Court denied defendant's petition on February 28, 1984.

The Clerk of the Court of Appeals for the Third Circuit sent a letter to the Clerk of the District Court, Michael E. Kunz, dated March 1, 1984 enclosing a certified copy of its reissued Judgment Order. (Affidavit of Sally Mvros, U.S. Court of Appeals for the Third Circuit).[1] The reissued

---

1. The following is an exact copy of the letter dated March 1, 1984 which the Clerk for the Court of Appeals for the Third Circuit sent to the Clerk of the District Court.

OFFICE OF THE CLERK

**UNITED STATES COURT OF APPEALS**
FOR THE THIRD CIRCUIT
21400 UNITED STATES COURTHOUSE
INDEPENDENCE MALL WEST
601 MARKET STREET
PHILADELPHIA 19106 − 1790

SALLY MRVOS
CLERK

TELEPHONE
215-597-2995

March 1, 1984

Mr. Michael E. Kunz, Clerk
U.S. District Court
Eastern District of PA
2609 U.S. Courthouse
Phila., PA 19106
   Re:
       U.S.A. vs. Jones, John D., et al., Appellant
          No. 83-1007
      (DC. Crim. No. 82-00366-01)

Judgment Order was filed by the Clerk of the District Court and docketed March 2, 1984 as "Cert. copy of Judgment order of USCA affirming judgment of district court, filed."[2] Both Stanford Shmukler, counsel for defendant, and JoAnne Epps, the Assistant United States Attorney assigned to this case, were sent copies of the March 1, 1984 letter. Sally Mvros, Clerk, Third Circuit, certified under oath that she sent copies of the letter to counsel for both parties and the copies of the letters were never returned to her office as undelivered. At the hearing on October 23, 1984, Mr. Schmukler acknowledged receipt of this letter and presented the copy he had received.[3] Both by affidavit and at the October 23 hearing, Ms. Epps stated that she never received a copy of the Third Circuit's March 1, 1984 letter.[4] By affidavit, Walter

---

Dear Sir:

Enclosed herewith is a certified copy of the judgment order in the above-entitled case(s). This certified judgment order is issued in lieu of a formal mandate and is to be treated in all respects as a mandate.

~~He return herewith x2x~~
~~x2x x2x z apppealx x x your information the enclosed k2dxx x x x consindxz x2xx x2x~~

Counsel are advised of the issuance of the mandate by copy of this letter. A copy of the certified judgment order is also enclosed showing costs taxed, if any.

Very truly yours,

*M. Elizabeth Ferguson*

Chief/Deputy
Clerk

DILLON'S DIAL
597-3133

sa
Enclosure
cc:     Stanford Shmukler, Esq.
        JoAnne A. Epps, Esq.

P.S. To the Clerk: The record was released to you when our mandate originally issued on November 30, 1983.

---

**2.** The March 2, 1984 docket entry of the District Court Clerk gives no notice that the petition for writ of certiorari was denied; the same docket entry had been made by the District Clerk on December 1, 1983 at the time the Court of Appeals affirmed my judgment. By order of January 3, 1985, the docket sheets of the clerk are made part of the record.

**3.** On the copy of the March 1, 1984 letter Stanford Schmukler presented at the hearing, a check mark appears at the name of Assistant United States Attorney JoAnne Epps suggesting that Mr. Schmukler may have received the copy intended for Ms. Epps.

**4.** I, JoAnne A. Epps, being duly sworn according to law, do state as follows:

1. I am an Assistant United States Attorney in and for the Eastern District of Pennsylvania, and am assigned to prosecute *United States v. John D. Jones*, Criminal No. 82–00366.

2. On or about August 1, 1984, I telephonically inquired of the Clerk of the United States Supreme Court regarding the status of the Jones case, which matter had been before the Supreme Court upon writ of certiorari as a result of an affirmance by the Third Circuit Court of Appeals of Judge Huyett's order disqualifying Jones' retained counsel, Wallace Worth. I was informed by the Clerk of the Supreme Court that certiorari had been denied on February 28, 1984, and that the matter had been returned to the Third Circuit.

3. On or about the same day I telephonically contacted the Clerk of the Third Circuit Court of Appeals and was advised that a letter serving as a mandate had been issued on March 1, 1984, addressed to the District Court with copies to defense counsel, Stanford Shmukler, and myself.

4. I did not receive a copy of the Third Circuit's March 1, 1984 mandate letter until a copy was recieved [sic] attached to Judge Huyett's order of October 16, 1984.

5. While the office of the United States Attorney for the Eastern District of Pennsylvania does receive the Criminal Law Reporter, it is not my policy to review it in order to

S. Batty, Jr., the Chief of Appeals for the United States Attorney's Office, stated that he does not recall seeing the March 1, 1984 letter pertaining to this criminal action, and that it is his responsibility to review all correspondence from the Third Circuit Court of Appeals received by the Office of the United States Attorney.[5]

Ms. Epps stated in her affidavit that the United States Attorney's Office receives the Criminal Law Reporter, but it is not her policy to review it to determine the status of her pending cases and it is not the responsibility of anyone else in the United States Attorney's Office to review the Criminal Law Reporter on behalf of the attorneys in the United States Attorney's Office. Ms. Epps further stated that United States Attorney's Office maintains no log of incoming mail.

Ms. Epps stated that it was not until approximately August 1, 1984 when she telephoned the Clerk for the Supreme Court that the government learned that certiorari had been denied on February 28, 1984 and that the action had been returned to the Third Circuit. At this time, Ms.

Epps called my chambers; this was the first time that I had been made aware of the status of the case. Therefore, on August 8, 1984, I entered an order setting the trial date for September 17, 1984. Defendant now contends that the Speedy Trial Act has been violated and the indictment should be dismissed with prejudice.

Under the Speedy Trial Act, a trial following an appeal should begin within seventy days from the date the action occasioning the retrial becomes final. 18 U.S.C. § 3161(e).[6] Both parties agree that the seventy-day period has been exceeded. The Third Circuit's mandate was reissued on March 1; the seventy-day period ended on or about May 11, 1984, well before the date the government or I became aware of the status of this criminal action. The only question is whether the indictment should be dismissed with or without prejudice. Section 3162 of the Speedy Trial Act provides that:

> (2) If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section

ascertain the status of my pending cases, nor is it the responsibility of anyone in this Office to do so on behalf of Assistant United States Attorneys.

6. With regard to incoming mail, I have been informed, and therefore state to the best of my information and belief, that all non-personal mail is opened by staff of the United States Attorney's Office mailroom, after which it is forwarded to the appropriate section chief. All mail from the Third Circuit Court of Appeals is forwarded to Walter S. Batty, Jr., Assistant United States Attorney and Chief of Appeals. The United States Attorney's Office maintains no log of incoming mail.

5. I, Walter S. Batty, Jr., being duly sworn according to law, do state as follows:

1. I am an Assistant United States Attorney in and for the Eastern District of Pennsylvania, and am Chief of Appeals.

2. I am aware of the present status of *United States v. Jones*, Criminal No. 82–00366 and of the fact that, according to the Third Circuit Clerk Sally Mrvos, on March 1, 1984, a letter was sent by the Third Circuit Court of Appeals to the District Court with copies to defense counsel, Stanford Shmukler, Esquire and JoAnne A. Epps, Assistant United States Attorney, which letter was sent in lieu of a formal mandate.

3. According to the procedures of the office of the United States Attorney, all correspondence from the Third Circuit Court of Appeals is directed to me for review.

4. I do not recall ever having seen a copy of the March 1, 1984 Third Circuit letter regarding *United States v. John D. Jones.*

6. Section 3161(e) sets forth the time limit within which a new trial or retrial must commence after the action occasioning new trial or retrial. Although counsel for both parties have agreed that 18 U.S.C. § 3161(e) applies, technically this case does not fit the situation for which § 3161(e) was created because there has never been a first trial. No other provision of the Speedy Trial Act directly addresses the issue of the time within which a trial shall commence after an interlocutory appeal and after *Flanagan v. United States,* —— U.S. ——, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984) in which the Court held that the district court's pretrial disqualification of defense counsel in criminal prosecution was not immediately appealable, this type of situation will not again arise. Nevertheless, the facts giving rise to dismissal of the indictment in this action are sufficiently analogous to those of a new trial or retrial after appeal that application of the seventy-day limit of section 3161(e) is warranted.

3161(h), the information or indictment shall be dismissed on motion of the defendant. The defendant shall have the burden of proof of supporting such motion but the Government shall have the burden of going forward with the evidence in connection with any exclusion of time under subparagraph 3161(h)(3). In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: *the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.* Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section.

18 U.S.C. § 3162(a)(2) (emphasis added). Section 3161(e) states "[t]he sanctions of section 3162 apply to this subsection." The government contends that each of the three factors listed warrant dismissal without prejudice. The government asserts that the case is a serious one; defendant is charged with receiving stolen property, selling stolen goods, and participating in a mail fraud scheme. The government further contends that the circumstances which necessitate dismissal of the indictment support a dismissal without prejudice. The government states that neither the United States Attorney's Office nor my chambers received notice of the Third Circuit's Judgment Order until August 1, 1984; in the interim, the government notes, defendant failed to take any action to ensure a speedy trial. The delay that resulted, the government claims, is not the sort of delay the Speedy Trial Act was designed to redress. Finally, the government argues that a dismissal without prejudice in this case will not thwart the purpose of the Speedy Trial Act because the defendant has suffered no prejudice and the delay was not the fault of the United States Attorney's Office or of the court.

Defendant, on the other hand, contends that this is the sort of case for which dismissal with prejudice is appropriate. The crime charged is not so serious, defendant contends, that the state prosecution would not serve the public interest. Defendant further argues that because the defendant did not contribute to the delay in any way and is prejudiced by it, the Speedy Trial Act requires that the indictment be dismissed with prejudice. Finally, defendant contends that a prosecution at this time would not only prejudice the defendant but also undermine the overall intent of the Act which was designed to protect society's interest in the prompt disposition of criminal cases.

In support of his position, defendant relies on two recent cases in which the courts dismissed the indictments with prejudice. In *United States v. Angelini*, 553 F.Supp. 367, 370 (D.Mass.1982), the court, examining the three factors suggested by § 3162(a)(2), held that dismissal with prejudice was appropriate. Similarly, in *United States v. Caparella*, 716 F.2d 976 (2d Cir. 1983), the court dismissed with prejudice the indictment against defendant for mail fraud. Considering the legislative history of the 1979 amendments to the Act, the court in *Angelini* held that a presumption exists in favor of dismissing an indictment with prejudice. Any other position, the court concluded, would make the Act self-contradictory because a defendant would be more prejudiced by the time delay created by a dismissal without prejudice than by no dismissal at all. *Angelini*, 553 F.Supp. at 370. Disagreeing with the court on *Angelini*, the court in *Caparella* found no presumption in favor of dismissal with prejudice; nevertheless, the *Caparella* court noted the legislative history of § 3161 *et seq.* which states in part " 'the committee intends and expects that use of dismissal without prejudice will be the exception and not the rule.'" *Caparella*, 716 F.2d at 979, quoting H.R.Rep. No. 390, 96th Cong., 1st Sess. 8–9 (reprinted in 1979 U.S. Code Cong. & Ad.News 805, 812–13). *See also United States v. Iaquinta*, 515 F.Supp. 708, 712 (N.D.W.V.1981), *rev'd on other*

*grounds,* 674 F.2d 260 (4th Cir.1982) (legislative history suggests that dismissal without prejudice should be granted only in rare instances, and the rule will be dismissal with prejudice.).

At the October 23, 1984 hearing, counsel for the government conceded the existence of a presumption of dismissal with prejudice, but argued that there will be cases when dismissal without prejudice is appropriate and this is such a case. Whether or not there is a presumption in favor of dismissal with prejudice, application of the statutory criteria set forth in § 3162 to the facts in this case inevitably leads to the conclusion that dismissal with prejudice is warranted.

■ I shall examine each of the three factors for determining the issue of prejudice. The first factor is the seriousness of the offenses with which defendant is charged. *See* 18 U.S.C. § 3162(a)(2); *United States v. Carrasquillo,* 667 F.2d 382, 390 (3d Cir.1981). Defendant does not deny that the federal charges against him are serious, but he contends that his offenses are covered by state charges. In December, 1983, defendant was convicted in Lehigh County of 25 of 26 felony counts of receiving stolen property and related charges; the state prosecution was the result of a joint investigation by the Pennsylvania State Police and the Federal Bureau of Investigation. Both the state and federal indictments were handed down in November 1982 and roughly covered the period between July, 1979 and June, 1982.

Counts 3 and 4 of the federal indictment pertain to the same tractor and essentially the same charge, receipt of stolen property, as count 1 of the state charges. Count 5 charges defendant with removing a Cumins diesel engine, causing its serial number to be eradicated, and placing the engine into another vehicle; the same engine was the subject of state counts 16, 17, 18, and 19 in which defendant Jones was charged with removal or falsification of I.D. numbers and dealing with a vehicle with removed or falsified numbers. Although none of the state charges against Jones pertain to the Cumins engine or the Freightliner tractor specified in counts 1 and 2, defendant suggests that the Cummins engine may have been a component of one of the tractors which was a subject of the state charges. More importantly, the dates of the offenses charged in counts 1 and 2 coincide with the time period the state charges cover. Counts six through eight of the federal indictment which charge defendant with mail fraud were not part of the state prosecution. I note that violence was not an element of any of the charges against defendant. With these facts in mind, particularly the overlap both on some of the substantive charges and the time period the federal and state counts covered, I conclude that just as in *Angelini,* 553 F.Supp. 367, the seriousness of defendant's alleged conduct is a neutral factor on the issue of dismissal with or without prejudice.

With respect to the second factor, the facts and circumstances leading to dismissal, the record establishes that dismissal with prejudice is warranted. The Speedy Trial clock ran on or about May 11, 1984, 70 days after the Third Circuit's mandate was issued; no trial was held during this period, and dismissal of the indictment is therefore mandatory. The circumstances leading to dismissal, however, were not the fault of the defendant. Rather this appears to be exactly the sort of case of administrative negligence which the Speedy Trial Act was intended to redress. It may well be that the March 1, 1984 mandate letter from the Third Circuit never reached the Office of the United States Attorney, but the burden of this type of administrative snafu should rest on the government and not on the defendant.

■ At the October 23, 1984 hearing, counsel for the government conceded that the burden of the mix-up and resulting delay should not be borne by defendant Jones, but emphasized that Jones has not been prejudiced by it. Defense counsel argued that prejudice to the defendant is not one of the criteria set forth in 18 U.S.C.

§ 3162(a)(2).[7] I believe, however, that prejudice is an element which may be considered in determining the effect of further prosecution on the administration of justice, but I emphasize that it is only one element which may be weighed along with others. *Caparella,* 716 F.2d at 980; *United States v. Bittle,* 699 F.2d 1201, 1208 (D.C.Cir.1983) (Prejudice to the defendant is one of the factors the district court may consider). Although defense counsel, in his affidavit, stated that he has been unable to determine yet whether any of defendant's anticipated witnesses have become unavailable, it is not at all clear that defendant has not been prejudiced. The federal indictment against defendant Jones is over two years old. When the potential for prejudice to the defendant is weighed along with the administrative muddle which occurred, it seems clear that the facts and circumstances leading to dismissal support a dismissal with prejudice. In *Angelini,* 553 F.Supp. at 370, the court dismissed the indictment with prejudice because the case had been "lost in the shuffle" of the court system. Similarly, this case can be characterized as having been "lost in the shuffle" between the Third Circuit Court of Appeals, the United States Attorney's Office, and the District Court.

Prosecution of this case will also frustrate the purpose of the Act and the administration of justice. The Speedy Trial Act was designed to implement and enforce the sixth amendment right to a speedy trial and to ensure uniformity of the speedy trial concept throughout the nation. H.R. Rep. No. 93–1508, 93d Cong.2d Sess., *reprinted in* 1974 U.S.Code Cong. and Adm. News, 7401. To this end, the Act establishes specific, mechanical time limits within which the various stages of a prosecution must occur; in this way, the Act is more stringent than the sixth amendment which permits a more flexible approach based largely on the prejudice sustained by a defendant because of delays in prosecution. *United States v. Iaquinta,* 674 F.2d 260, 264 (4th Cir.1982).

In this case, expiration of the speedy trial clock occurred because of the sort of administrative mix-up or neglect which the Act was intended to redress. To dismiss the indictment against Jones without prejudice would contravene the purpose of the Act by condoning a lengthy delay caused by the fact the case was lost in the shuffle when the Act is intended to provide orderly and expeditious federal criminal prosecutions. Furthermore, prosecution of this action would undermine the public's interest and that of the defendant in a speedy criminal trial. The circumstances leading to dismissal in this case coupled with the seriousness of the offenses with which defendant is charged, the needs of justice, and the effect of a prosecution on the administration of the Speedy Trial Act warrant dismissal with prejudice.[8]

---

7. Section 3162(a)(2) states that the list of factors included therein is not exclusive: "[i]n determining whether to dismiss the case with or without prejudice, the court shall consider, *among others,* each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." (emphasis added).

8. Several lessons may be learned from the administrative muddle which took place in this case.

1. The Clerk of the Court of Appeals should give clearer and more meaningful notice to the Clerk of the District Court when application for certiorari is denied by the Supreme Court.
2. The District Court Clerk should be more alert to the precise language in a notice from the Clerk of the Court of Appeals as to the disposition of cases on appeal.
3. The United States Attorney should keep careful track of his cases which are on appeal.