**UNITED STATES of America**

v.

**Alvin Sylvester SCOTT.**

**Crim. No. K–90–0161.**

United States District Court,
D. Maryland.

July 11, 1990.

Breckinridge L. Willcox, U.S. Atty., and Jamie M. Bennett, Asst. U.S. Atty., Baltimore, Md., for U.S.

Fred Warren Bennett, Federal Public Defender, and Mary French, Asst. Federal Public Defender, Baltimore, Md., for defendant.

FRANK A. KAUFMAN, Senior District Judge.

Defendant Scott has moved to dismiss *with prejudice* the indictment pending against him as a result of the government's failure to comply with the requirements of the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161–62. The government agrees that the indictment should be dismissed but contends such dismissal should be *without* prejudice. For the reasons which follow, defendant's motion to dismiss, *with prejudice*, will be granted.

I.

Two sections of the Speedy Trial Act, 18 U.S.C. §§ 3161–74, are most important herein. Section 3161(b) provides in relevant part:

Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

Section 3162(a)(1) provides:

If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment

or information is filed within the time limit required by section 3161(b) ..., such charge against that individual contained in such complaint shall be dismissed or otherwise dropped. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

## II.

In this case, Scott is charged in a one-count indictment, as follows: [1]

On or about February 25, 1989, in the State and District of Maryland,

### ALVIN SYLVESTER SCOTT

having been lawfully committed following conviction to the custody of the Attorney General, by virtue of a Judgment and Commitment Order of the United States District Court for the Southern District of New York, did willfully escape from the Volunteers of America, 4601 E. Monument Street, Baltimore, Maryland 21205, an institution in which he was confined by the direction of the Attorney General.

18 U.S.C. Section 751(a)

On June 23, 1977, Scott was sentenced for bank robbery by the United States District Court for the Southern District of New York to a term of fifteen years. Scott's federal sentence was interrupted by his 1979 transfer to the Maryland prison

system to serve a state sentence of fifteen years for robbery with a deadly weapon. Scott was returned to federal custody on March 29, 1982. When Scott allegedly escaped in 1989, he was residing, en route to his expected parole, at the Volunteers of America (VOA), a halfway house located in Baltimore, Maryland.

On April 14, 1989, United States Magistrate Paul Rosenberg of this Court issued an arrest warrant for Scott for escape in violation of 18 U.S.C. § 751(a) based on a criminal complaint alleging that Scott had departed without permission from the VOA. Scott was arrested by the Baltimore County Police upon charges of battery and resisting arrest in early January, 1990.[2] On January 12, 1990, Scott was returned to federal custody on the outstanding bench warrant which had been issued by Magistrate Rosenberg. Accordingly, it was on January 12, 1990, as both sides agree, that the thirty-day period provided by section 3161(b) began to run. It was also on January 12, 1990 that Scott's initial appearance on the escape charge was conducted before Magistrate Rosenberg who on that day appointed the Federal Public Defender to represent Scott. Since January 12, 1990, Scott has been detained at the Baltimore City Jail in pretrial confinement.

On January 22, 1990, ten days after Scott was returned to federal custody following his arrest and ten days after section 3161(b)'s thirty-day period began to run, government and defense counsel discussed over the telephone a plea offer made by the government pursuant to which it was proposed that Scott plead guilty to a violation of 18 U.S.C. § 751(a).[3] Defense counsel

---

**1.** This Court held a lengthy hearing on defendant's motion to dismiss on June 14, 1990. During that hearing, proffers were made by government and defense counsel concerning the facts and the circumstances leading up to the filing of the indictment in this case. In addition, thereafter, at the request of this Court, counsel filed a "Joint Memorandum Summarizing Plea Negotiations," stipulating a number of facts. Thus, the record in this case sets forth with a great degree of specificity the facts and circumstances surrounding the delay in filing the indictment in this case. That specificity enables this Court "fully [to] explicate its reasons for dismissing with prejudice." United States v. Taylor, 487

U.S. 326, 337, 108 S.Ct. 2413, 2420, 101 L.Ed.2d 297 (1988).

**2.** Those charges have since been dropped.

**3.** 18 U.S.C. § 751(a) provides:

Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or commissioner, or from

requested that the plea be entered pursuant to Federal Criminal Rule 11(e)(1)(C) with an agreed sentence of eighteen months' incarceration to begin on the date of sentencing.[4]

On February 6, 1990, government counsel sent a proposed written plea agreement to defense counsel. That proposal required Scott to plead guilty to a violation of 18 U.S.C. § 751, pursuant to subparagraph (A) and/or (B) of Federal Criminal Rule 11(e)(1), rather than subparagraph (C),[5] and included a government commitment to recommend that Scott be sentenced at the low end of whatever sentencing guideline would subsequently be determined by the Court to be applicable in the light of the presentence report. On February 12, 1990, defense counsel sent a letter to government counsel referring to the terms of the plea agreement as discussed on January 22, 1990, and requested that the government modify its written plea offer of February 6, 1990 in accordance with that discussion.

On February 22, 1990, government counsel sent a letter to defense counsel stating that an oral plea offer is not binding upon the government and requesting a response to the February 6, 1990 written plea offer by March 5, 1990. On March 9, 1990, defense counsel sent a letter to the government explaining defense counsel's inability to reach government counsel by telephone and urging prompt resolution of the case "due to continuing speedy trial violations." The letter went on to propose a plea agreement under Federal Criminal Rule 11(e)(1)(C) with a sentence of twenty-seven months to begin on the date of Scott's arrest.

On March 20, 1990, government counsel sent a letter to defense counsel rejecting defendant's proposal, renewing the February 6, 1990 plea offer, and requesting a response to that offer by March 25, 1990. On March 21, 1990, defense counsel rejected the government's March 20, 1990 renewal of the written plea offer of February 6, 1990 in a telephone conversation with government counsel.

After defendant broke off plea negotiations with the government on March 21, 1990, government counsel did not present the case to a grand jury until April 17, 1990, twenty-seven days later. Thus, the indictment came ninety-five days after January 12, 1990, the date when the period prescribed by section 3161(b) commenced to run; even if the entire period from January 22, 1990 to March 21, 1990 is excluded, thirty-seven days had run since January 12, 1990.[6] In explaining the circumstances of

the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both; or if the custody or confinement is for extradition, or for exclusion or expulsion proceedings under the immigration laws, or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined not more than $1,000 or imprisoned not more than one year, or both.

4. Rule 11(e)(1) provides:

(1) **In General.** The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

(A) move for dismissal of other charges; or

(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) agree that a specific sentence is the appropriate disposition of the case.

The court shall not participate in any such discussions.

5. *See* note 4, *supra.*

6. In *United States v. Montoya,* 827 F.2d 143, 147 n. 4 (7th Cir.1987), the Seventh Circuit noted that the *Committee on the Administration of the Criminal Law of the Judicial Conference of the United States, Guidelines to the Administration of the Speedy Trial Act of 1974, as Amended* (1984) at 24–25 "adopt [Federal Criminal] Rule 45's time computations as the appropriate measures for computing time under the Speedy Trial Act." That Rule provides, in relevant part:

In computing any period of time the day of the act or event from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, Sunday, or a legal holiday.... When a

the delay, government counsel has stated to this Court that her involvement in trial preparation of a murder case, scheduling conflicts with the government case agent, and personal matters hindered her from filing an indictment in this case before April 17, 1990; however, during the June 14, 1990 motions hearing concerning defendant's motion to dismiss, government counsel stated that after plea negotiations broke down on March 21, her original plan had been (and remained) to seek indictment by a grand jury on April 17th rather than at an earlier date. If the prosecutor adopted that plan because she believed that section 3161(b)'s thirty-day period began to run afresh on March 21, 1990, the prosecutor was in error.

After the indictment was filed on April 17, 1990, Scott was arraigned on April 27, 1990 before Magistrate Rosenberg. On May 7, 1990, Scott filed his "Motion to Dismiss with Prejudice for Violation of the Speedy Trial Act," which is the subject of this opinion. Scott was charged in a superseding indictment, returned on May 22, 1990, with the same charges as contained in the original indictment.

### III.

▮▮▮ The introductory sentence of 18 U.S.C. § 3161(h) provides that certain "periods of delay shall be excluded in computing the time within which an information or an indictment must be filed," as required by section 3161(b). Among the period of delays specified by section 3161(h) is "delay resulting from consideration by the court of a proposed plea agreement to be entered into by the defendant and the attorney for the Government." § 3161(h)(1)(I). That exclusion is not applicable herein since at no time before Scott filed his motion to dismiss on May 7, 1990 was there a plea issue pending before this Court in this case. *See United States v. Bowers*, 834 F.2d. 607, 610 (6th Cir.1987). There is no specific exclusion set forth in section 3161(h) for exclusion of time spent in plea negotiations by counsel for the government and the defendant as occurred in this case.[7] However, the list of exclusions in 3161(h) is non-exclusive. *Id.; United States v. Thurlow*, 710 F.Supp. 380, 381 (D.Me.1989), citing *United States v. Jodoin*, 672 F.2d 232, 238 (1st Cir.1982). In *Bowers*, because of the exclusion of certain time periods, the indictment was handed down within section 3161(b)'s thirty-day period. However, the Sixth Circuit, in its per curiam opinion, also wrote that, in any event, the "indictment was timely," *id.* at 609, because in an instance in which about half of the thirty-day period was used up by "failure by the defendant ... to communicate to the government his rejection of a tentative plea agreement," that delay "can be viewed as a delay resulting from proceedings concerning the defendant." *Id.* at 610. Those last words refer to the language of section 3161(h)(1) which excludes "[a]ny period of delay resulting from other proceedings concerning the defendant, including but not limited to" and then goes on to state a number of specific exclusions.[8] Thus, *Bowers* indicates that under

---

period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation.
Fed.R.Crim.P. 45(a).

7. As discussed *infra* at p. 405, *et seq.*, the passage of time during such plea negotiations is relevant with regard to the question of whether dismissal under section 3162(a) should be with or without prejudice.

8. Section 3161(h)(1) provides as follows:
(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—
(A) delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant;
(B) delay resulting from any proceeding, including any examination of the defendant, pursuant to section 2902 of title 28, United States Code;
(C) delay resulting from deferral of prosecution pursuant to section 2902 of title 28, United States Code;
(D) delay resulting from trial with respect to other charges against the defendant;
(E) delay resulting from any interlocutory appeal;
(F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;

certain circumstances, time consumed by the government and the defendant in plea negotiations can support a section 3161(h)(1) exclusion.

Also, in *United States v. Morety,* 702 F.Supp. 957 (E.D.N.Y.1988), where thirty-one days passed after arrest and where "[f]or eight of the thirty days allowed between arrest and indictment, defendant gave the prosecutor every reason to believe that he would waive indictment and plead guilty to an information," *id.* at 959, Judge Platt found "no violation of the Speedy Trial Act occurred," *id.* at 960, writing that the opposite "result would pervert the Speedy Trial Act," *id.,* by permitting, in effect, a defendant to mislead the government into permitting the running of the thirty-day clock.

In this case, there is no evidence, as discussed *infra* at p. 406, that the defendant unilaterally, in bad faith or otherwise, caused any delay during the plea negotiations period from January 22, 1990 to March 21, 1990. Nevertheless, it is certainly arguable that those negotiations are "proceedings concerning the defendant" within the meaning of the introductory clause of section 3161(h)(1) and that, therefore, the January 22—March 21 time period is excludable. However, in this case, it is not necessary for this Court to decide that precise question as the government has conceded that the thirty-day provision of section 3161(b) has been violated. That concession is appropriate because ten days elapsed between arrest on January 12, 1990 and commencement of plea negotiations on January 22, 1990, twenty-seven days elapsed between the termination of plea negotiations on March 21, 1990 and indictment on April 17, 1990, and there was thus a total of thirty-seven days of includable time under section 3161(b), even if all of the time between January 22, 1990 and March 21, 1990 is counted as excludable time.

## IV.

■ Under 18 U.S.C. § 3162(a)(1), Scott, as a defendant not charged in an information or indictment within thirty days of his arrest, is entitled to dismissal of the indictment. There remains, however, the question of whether the dismissal should be with or without prejudice. "[T]he decision to dismiss with or without prejudice [is] left to the guided discretion of the district court, and ... neither remedy [is] given priority." *United States v. Taylor,* 487 U.S. 326, 335, 108 S.Ct. 2413, 2419, 101 L.Ed.2d 297 (1988) (footnote omitted). *See also United States v. Thomas,* 705 F.2d 709, 710 (4th Cir.), *cert. denied,* 464 U.S. 890, 104 S.Ct. 232, 78 L.Ed.2d 225 (1983). In exercising its discretion "whether to dismiss the case with or without prejudice, the [district] court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." § 3162(a)(1). In addition, although not specifically enumerated among the four factors in section 3162(a)(1), the legislative history of the Speedy Trial Act leaves "little doubt" that "the presence or absence of prejudice to the defendant" is a "relevant [factor] for a district court's consideration." *Taylor,* 487 U.S. at 334, 108 S.Ct. at 2418. The government "bears the initial burden of explaining why the [speedy trial] violation occurred." *United States v. May,* 819 F.2d 531, 533 (5th Cir. 1987) (footnote omitted).

(G) delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure;

(H) delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and

the defendant's arrival at the destination shall be presumed to be unreasonable;

(I) delay resulting from consideration by the court of a proposed plea agreement to be entered into by the defendant and the attorney for the Government; and

(J) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

With regard to the first factor, seriousness of the crime, Scott contends that he is charged with a minor crime and that there is no evidence that he endangered any person or property as a result of his escape from a non-secure institution. Scott is charged with escape from the custody of the Attorney under 18 U.S.C. § 751(a), pursuant to which a maximum period of five years' confinement can be imposed. Under the applicable sentencing guidelines, the offense level appears to be thirteen and to require a mandatory prison term. *See U.S. S.G.* § 2P1.1(a)(1) at 2.119 and § 5C2.1(f) at 5.11 (Oct. 15, 1988).[9] Crimes such as possession of stolen mail, *United States v. Bittle*, 699 F.2d 1201, 1208 (D.C.Cir.1983); *Morety*, 702 F.Supp. at 960–61, and transportation of illegal aliens, *United States v. Salgado–Hernandez*, 790 F.2d 1265, 1268 (5th Cir.), *cert. denied*, 479 U.S. 964, 107 S.Ct. 463, 93 L.Ed.2d 408 (1986), have been recognized as serious crimes. *But see United States v. Caparella*, 716 F.2d 976, 980 (2d Cir.1983) ("Congress viewed [mail theft] crime ... as the lowest order of felony," and thus should not be deemed "serious" for purposes of Speedy Trial Act). Both of those crimes carry penalties and base offense levels similar to those applicable to the offense of escape. *See also United States v. Hawthorne*, 705 F.2d 258, 260 (7th Cir.1983) (unlawful possession of stolen government checks, punishable by five years' imprisonment, considered to be serious for purposes of the Speedy Trial Act). Scott also points out that at least one court has considered the Parole Commission's classification of an offense in determining whether it is serious for purposes of the Speedy Trial Act. *See Salgado–Hernandez*, 790 F.2d at 1267–68. However, escape by a prisoner prior to his release on parole is not graded by the Parole Commission. Instead, the Commission addresses such conduct by adding eight to sixteen months to a prisoner's original release date

if the escape does not involve force or fear applied to persons. *See* 28 C.F.R. § 2.36(a)(2)(i)(A).

Scott correctly points out that the alleged escape was from a non-secure facility. However, Scott's allegation that he did not endanger anyone after his escape is at least questionable since while on escape status, Scott allegedly committed battery and resisted arrest by the Baltimore County Police. Still, the Baltimore County charges in that regard have been dropped. In that context, this Court will treat Scott as innocent of those charges. But, in any event, in the view of this Court, escape from a non-secure institution is a serious breach of trust by an inmate. On balance, therefore, defendant's alleged crime is a relatively serious offense for purposes of determining whether dismissal under section 3162(a)(1) should be with or without prejudice.

With regard to the second factor, the facts and circumstances of the delay in the case, as analyzed *supra*, disclose that between arrest on January 12, 1990 and indictment on April 17, 1990, thirty-seven days unrelated to plea negotiations elapsed and fifty-eight additional days passed between January 22, 1990 and March 21, 1990 while plea negotiations were in progress. Regardless of whether that latter period of time should or should not constitute excludable time,[10] plea negotiations are highly relevant to the required inquiries under section 3162(a)(1) regarding (1) the facts and circumstances of the case which led to dismissal, and (2) the impact of reprosecution on the administration of the Speedy Trial Act and on the administration of justice. Considering the crowded federal court dockets and the heavy federal caseloads carried by prosecutors and defense counsel, good faith plea bargaining between a criminal defendant and the government must be encouraged rather than dis-

---

**9.** Scott also notes that the Sentencing Commission, after the escape alleged in this case, passed an amendment reducing the offense level for escape from non-secure custody by four levels (from level 13 to level 9) with a specified effective date of November 1, 1990. *See* 55 Fed.Reg. 19188, 19201 (May 8, 1990) (notice of submis-

sion of amendments to the sentencing guidelines to Congress). However, it is the sentencing guidelines applicable when the alleged escape occurred which are most relevant herein.

**10.** *See* Part III, *supra*.

couraged. And while, as defendant has pointed out, there is nothing to prevent the government from seeking indictment while plea negotiations are pursued, it surely would be a waste of time of grand jurors, prosecutors and case agents—and a waste of taxpayer's money-if the government were to take every criminal case to a grand jury while plea negotiations based on waiver of indictment are ongoing.

When plea negotiations commenced on January 22, only ten days of speedy trial time had elapsed. However, in her March 9, 1990 letter, defense counsel urged upon government counsel prompt resolution of plea negotiations "due to continuing speedy trial violations," thus seemingly signalling to the prosecutor the fact that if the time since January 22, 1990 were not excluded, fifty-six days of speedy trial time had elapsed on March 9, 1990. Rather than filing an indictment against Scott before more time passed, government counsel instead renewed an earlier plea offer which Scott had previously rejected. When that renewed plea offer was again rejected and plea negotiations were broken off by defense counsel one day later on March 21, 1990, sixty-eight days of speedy trial time had already elapsed if the time between January 22, 1990 and March 31, 1990 were not excluded. Nevertheless, the prosecutor decided to wait an additional twenty-seven days before filing an indictment against Scott on April 17, 1990, ninety-five days after defendant's arrest.

It must be emphasized that the record in this case does not reflect any bad faith conduct on the part of the defendant, or the government, or counsel on either side. To the contrary, the record suggests that plea negotiations were conducted throughout in good faith. However, "the mere lack of improper motive is not a sufficient excuse for [speedy trial] delay. Some affirmative justification must be demonstrated to warrant a dismissal without prejudice." *United States v. Russo*, 741 F.2d 1264, 1267 (11th Cir.1984). Herein, the prosecutor apparently could have presented this case to the grand jury and sought indictment within approximately a week after March 9, 1990, or certainly within about

a week after March 21, 1990. She chose not so to do until April 17, 1990 to meet the convenience of herself and her case agent. That is not a permissible reason under the Speedy Trial Act.

Several courts have considered plea negotiations between the parties as one of the circumstances leading to delay within a case. In *United States v. Morety, supra*, defendant was charged with multiple offenses involving receiving stolen checks. After concluding that because of the defendant's actions certain time occupied by plea negotiations should be excluded and that, therefore, the thirty-day 3161(b) period had not run, the district court stated that, in any event, if that period had run, it would have opted for dismissal without prejudice under section 3162(a)(1)'s standards noting that "the clear showing that defendant, and not the prosecutor, caused much of the delay, tips the balance heavily in favor of dismissal without prejudice." 702 F.Supp. at 961. In *United States v. Thurlow, supra*, speedy trial time elapsed, *inter alia*, as a result of the court's delay in considering a guilty plea tendered by defendant. After refusing to exclude such time from speedy trial calculation, the court dismissed the indictment without prejudice. In so doing, the court concluded that "the facts and circumstances surrounding this case weigh in favor of dismissal without prejudice. The Government is not responsible for the Court's need for time to consider the plea before it, and there has been no indication that the Government has engaged [in] dilatory tactics in order to prejudice the Defendant." 710 F.Supp. at 384. In *United States v. Simmons*, 786 F.2d 479, 484 (2d Cir.1986), Chief Judge Feinberg suggested that in order to determine whether certain periods of delay are reasonable under the Speedy Trial Act, any such delay "must be considered in the context of an already lengthy period of delay" in the case, and further stated:

> While a week's delay would obviously not ordinarily constitute a "long postponement" under [the case law], its effect was cumulative of earlier delays in an already protracted schedule. We are

sympathetic to the pressures of other demands on the court's time, but the circumstances here made it *imperative to minimize further delay.*

*Id.* (citations omitted; emphasis added).

In the within case, all twenty-seven days of the delay after plea negotiations ended on March 21, 1990 and until indictment on April 17, 1990 are directly attributable to the government. The extent of that time passage is magnified when one considers each and all of the preceding occurrences. The indictment in this case came ninety-five days after defendant's arrest, thirty-nine days after defense counsel specifically warned the prosecutor of speedy trial violations, and then twenty-seven days after plea negotiations were broken off. Ninety-five days of speedy trial time had expired by April 17, 1990 if the plea negotiation period between January 22, 1990 and March 21, 1990 is included, and thirty-seven days had expired by April 17, 1990 if all of that negotiation time is excluded. Certainly, those circumstances "made it imperative," on and after March 21, 1990, for the prosecutor "to minimize further delay." *Id.* Even though none of the delay in this case was motivated by any attempt by the prosecutor to gain any advantage, neither was the delay between March 21 and April 17, 1990 the result of mere negligence or inadvertence. On March 9, 1990, government counsel had been specifically warned by defense counsel that, in the latter's view, there were "continuing speedy trial violations." That view may or may not be a correct legal opinion since it may be that all of the time between January 22, 1990 and March 9, 1990—and even March 21, 1990—could be deemed excludable. *See* the discussion *supra* at p. 8 *et seq.* But having been so put on notice, it was incumbent upon government counsel, at the very least, not to plan to let the Speedy Trial Act clock tick beyond the thirty-day section 3161(b) point, even if the prosecutor were willing to take her chances of prevailing in connection with what must be characterized as an open question of law, *i.e.,* whether all of the plea negotiations period between January 22, 1990 and March 21, 1990 was excludable under section 3161(h). In

some circumstances, mere negligence or inadvertence may or may not be enough to bring about dismissal with prejudice under section 3162(a)(1). *See Russo,* 741 F.2d at 1268; *Caparella,* 716 F.2d at 980. Here, the delay was not the result of mere inadvertence or negligence, but rather a prosecutorial decision not to seek indictment until, giving the government the best of it, thirty-seven days of time under section 3161(b) had elapsed. While the delay of seven days beyond that section's thirty-day limit is certainly not great, however, *see Caparella* at 977–980 (twenty-one days); *United States v. Smith,* 588 F.Supp. 1403 (D.Haw.1984) (seventeen days after seventy-day limit in § 3161(c)(1) had passed), the government, if it wanted all negotiation time excluded from January 22, 1990 to March 21, 1990, should seemingly either have sought an exclusion order under section 3161(h) from this Court or, at the very least, not have let twenty-seven days pass after March 21, 1990 in addition to the initial ten days of time which elapsed between arrest on January 12, 1990 and commencement of plea negotiations on January 22, 1990. Accordingly, the government's said post-March 21, 1990 conduct favors dismissal with prejudice in the light of the facts and circumstances in this case.

In evaluating the third and fourth factors, the impact upon the administration of the Speedy Trial Act and upon the administration of justice, the government and defendant have raised two competing interests. Scott contends that dismissal with prejudice would not impede the administration of justice since the justice system already has mechanisms for ensuring that he will be punished for his alleged misconduct. The Parole Commission imposes punishment on prisoners who engage in misconduct before their release on parole. Under the parole rescission guidelines, when a prisoner escapes, an additional eight to sixteen months are added to the prisoner's original presumptive parole date or effective parole date. 28 C.F.R. § 2.36(a)(2)(i)(A). As a consequence, Scott contends, dismissal with prejudice will not result in Scott's return to society without

suffering substantial punishment for his actions. *Cf. United States v. Jones*, 602 F.Supp. 1045, 1050 (E.D.Pa.1985) (dismissal with prejudice ordered where court considered the existence of overlapping state and federal charges for the same events and time periods).

The government responds that the administration of justice will be adversely affected by permitting a defendant to avoid prosecution simply by engaging in plea negotiations and then refusing government offers once he is certain that a speedy trial violation has occurred. According to the government, it may be difficult to assess, in a given case, whether a defendant is negotiating in good faith or solely for purposes of delay. While the government raises a valid concern, one that has been recognized and dealt with appropriately in *Bowers* and in *Morety*, in this case none of the seven days of delay beyond the thirty-day maximum is attributable to defendant. Rather, all of it is attributable to the government. *See Jones*, 602 F.Supp. at 1050: "The circumstances leading to dismissal [of the indictment], however, were not the fault of the defendant. Rather, this appears to be exactly the sort of case of administrative negligence which the Speedy Trial Act was intended to redress." In *Jones*, there was a failure of communication concerning receipt by government trial counsel of an order of the Third Circuit which triggered the running of section 3161(c)(1) requiring commencement of trial within seventy days of indictment or initial appearance whichever first occurs. The "administrative negligence" in *Jones* hardly impacts more adversely upon the administration of the Speedy Trial Act than does the affirmative decision of the prosecutor in this case not to seek indictment until April 17, 1990. Thus, while, as to the fourth factor, the administration of justice, there is a rather even balance, application of the third factor, administration of the Speedy Trial Act, favors dismissal with prejudice.

The fifth and final factor this Court must consider is the prejudice to defendant resulting from the government's delay in bringing the indictment. The government contends that Scott suffered no prejudice as a result of the delay since Scott has been receiving credit in connection with his 1977 sentence since his arrest on January 12, 1990 and would most surely have been in federal confinement now whether or not section 3161(b)'s requirements had been met in this case. The government further notes that Scott has not claimed that the delay has impaired his ability to prepare a defense in this case.

Scott counters that he has been in fact prejudiced by the delay in several respects. First, Scott claims that by being detained in the Baltimore City Jail, he has been unable to participate in needed drug rehabilitation programs typically offered at federal correctional institutions. However, Scott seemingly had access to such treatment for many years while serving his 1977 sentence. Second, according to Scott, he has the right to a parole rescission hearing under 28 C.F.R. §§ 2.34–2.36. The parole guidelines do provide that such a hearing will not be scheduled until the prisoner is returned to a federal institution. A prompt hearing concerning rescission of his parole would have given Scott a speedier chance to explain his actions concerning his alleged escape, to make up-to-date parole requests, and to present evidence of any progress in his rehabilitation. Also, Scott notes that this Court has the discretion to order that any sentence in this case run concurrently with the unexpired term of the 1977 federal sentence which Scott is now serving. *United States v. Rogers*, 897 F.2d 134, 136–38 (4th Cir.1990). Scott contends that each day which passes causes prejudice to him by impairing the possibility of his obtaining a sentence in this case, if he is convicted herein, running concurrently with the sentence he was completing at the time he allegedly unsuccessfully left the VOA. In *United States v. Rucker*, 464 F.2d 823, 826–27 (D.C.Cir.1972), Judge McGowan recognized that type of prejudice in the context of a constitutional challenge to delay between arrest and bail as grounds for dismissal of an indictment with prejudice, and wrote:

In *Smith v. Hoey*, 393 U.S. 374 [89 S.Ct. 575, 21 L.Ed.2d 607] (1969), the Supreme Court stated that "[a]t first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer from 'undue and oppressive incarceration prior to trial.' But the fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge." *Id.* at 378 [89 S.Ct. at 577]. Specifically, the Court noted four types of prejudice which such a defendant might suffer:

1. "First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed." *Id.*

2. "Secondly, under procedures now widely practiced, the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened, by the pendency of another criminal charge outstanding against him." *Id.*

3. "And while it might be argued that a person already in prison would be less likely than others to be affected by 'anxiety and concern accompanying public accusation,' there is reason to believe that an outstanding untried charge (of which even a convict may, of course, be innocent) can have fully as depressive an effect upon a prisoner as upon a person who is at large." *Id.* at 379 [89 S.Ct. at 577].

4. "Finally, it is self-evident that 'the possibilities that long delay will impair the ability of an accused to defend himself' are markedly increased when the accused is incarcerated.... [W]hile 'evidence and witnesses disappear, memories fade, and events lose their perspective,' a man isolated in prison is powerless to exert his own investigative efforts to mitigate these erosive effects of the passage of time."

*Id.* at 379–80 [89 S.Ct. at 577–80] (footnote omitted).

*Id.* at 825–26.

In this case, the delay, other than the delay during the January 22, 1990—March 21, 1990 negotiation period, has seemingly not caused any prejudice of type 4 as set forth by Justice Stewart in *Smith v. Hoey*. The other three types of prejudices are present herein but only minimally. Consequently, the prejudice component would appear to weigh very slightly in favor of dismissal with prejudice.

## V.

In sum, in this case, with regard to the four factors listed in section 3162(a)(1) and the additional fifth factor of prejudice, the first factor, seriousness of the crime, weighs somewhat in the government's favor; the fifth factor, prejudice to Scott, weighs very slightly in Scott's favor; the fourth factor, administration of justice, is rather a standoff; and the second and third factors, facts and circumstances and administration of the Speedy Trial Act, weigh rather clearly in Scott's favor. On balance, therefore, dismissal with prejudice, under section 3162(a)(1) is required.

## VI.

For the reasons stated in this opinion, defendant's "Motion to Dismiss with Prejudice for Violation of the Speedy Trial Act" will be granted, and the indictment pending against the defendant in this case will be accordingly dismissed with prejudice.